686 So.2d 1324 (1996)
Ronnie FERRELL, Appellant,
v.
STATE of Florida, Appellee.
No. 83076.
Supreme Court of Florida.
September 19, 1996.
Rehearing Denied December 10, 1996.
*1325 Teresa J. Sopp, Jacksonville, for Appellant.
*1326 Robert A. Butterworth, Attorney General and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Ronnie Ferrell appeals his convictions and sentences for armed robbery, armed kidnapping, and first-degree murder, including a sentence of death for the first-degree murder conviction. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm Ferrell's convictions and sentence of death.
The record reflects the following facts. Ferrell, Kenneth Hartley and Sylvester Johnson were all convicted of the first-degree murder, robbery, and kidnapping of seventeen-year-old Gino Mayhew (the victim). They were each tried separately. Hartley was convicted as charged and sentenced to death.[1] Johnson was convicted and sentenced to life imprisonment. The following evidence was presented at Ferrell's trial.
On April 20, 1991, the victim ran into the apartment of Lynwood Smith acting very excited and upset. The victim told Smith that he had just been beaten up and robbed by two men, one of whom looked like Kenneth Hartley and one of whom had his face covered. Later that evening, a witness saw Ferrell and Johnson at a pool room and the witness overheard Ferrell state that he had beat and robbed the victim.
Sidney Jones worked for the victim in the victim's crack cocaine business. He testified to the following information. On April 22, the victim was selling crack from his Chevrolet Blazer at an apartment complex. On that date, Jones saw the three codefendants together near the Blazer. He saw Hartley holding a gun to the victim's head and saw him force the victim into the driver's seat. Hartley climbed into the back seat behind the victim. Ferrell climbed into the front passenger seat. Johnson was outside the Blazer talking to Hartley. After Hartley, Ferrell, and the victim entered the Blazer, Jones saw it leave the apartment complex at a high speed and heard Ferrell shout out of the Blazer that the victim would "be back." Johnson followed soon thereafter in a truck.
Another witness confirmed that the victim, Ferrell, and another individual left the apartment complex together in the victim's Blazer at a high rate of speed.
On April 23, police found the victim's Blazer parked in a field behind an elementary school. The victim's body was found slumped over in the driver's side seat of the Blazer. He had been killed by bullet wounds to the head (he had been shot five times: one shot was fired into his forehead, three shots were fired into the back of his head, and one shot was fired into his shoulder).
Several weeks after the victim was found, Jones told police what he had seen on April 22, and Ferrell, Hartley, and Johnson were arrested for the victim's murder. Ferrell provided police with several conflicting stories as to his whereabouts on the night of the murder, which were rebutted at trial.
While in jail, Ferrell talked to a cellmate about the crime. The cellmate testified as follows. Ferrell told him that Hartley and Johnson had previously robbed the victim and that Ferrell was involved in that robbery; that Johnson and Hartley had been recognized by the victim; and that Ferrell, Hartley, and Johnson conspired to murder the victim to prevent him from retaliating for the robbery. Ferrell told the cellmate that the three of them agreed on a plan to purchase a large amount of crack from the victim to get the victim off by himself. Ferrell was the one who approached the victim about the sale because the victim knew him and had not recognized him in the previous robbery. Ferrell further stated that Hartley entered the Blazer with his gun and told the victim "you know what this is." They took the victim to the isolated field where they robbed him of drugs and money and then *1327 Hartley shot the victim in the head four or five times. Johnson met them at the field in the truck and drove them away from the scene. The cellmate's testimony included details about the crime that had not been released to the public.
Ferrell presented no evidence or witnesses in his defense and was convicted as charged. At the penalty phase proceeding, the State introduced Ferrell's convictions for a 1984 armed robbery and a 1988 riot. A correctional officer testified regarding Ferrell's actions during the 1988 riot. Again, the defense presented no evidence. The jury recommended, by a seven-to-five vote, that the death penalty be imposed.
The trial judge postponed sentencing until Hartley and Johnson were tried and sentenced. Hartley received the death penalty; Johnson received a sentence of life imprisonment. The trial judge sentenced Ferrell to death after finding and giving great weight to five aggravating circumstances (prior violent felonies; committed during the course of a kidnapping; committed for financial gain; heinous, atrocious, or cruel (HAC), and cold, calculated, and premeditated (CCP)). He also found but gave slight weight to the mitigating circumstance that Ferrell was not the actual shooter. Although not considered in aggravation, the trial judge noted that Ferrell was just as culpable as the shooter because he used his friendship with the victim to lure the victim to his death.
The trial judge sentenced Ferrell to consecutive sentences for the other two convictions: thirty years as a habitual felony offender for the robbery conviction and life imprisonment as a habitual felony offender for the kidnapping conviction.
Ferrell raises twelve claims in this appeal, asserting that: (1) the trial judge improperly commented on the biblical origins of the commandment "thou shalt not kill"; (2) the trial judge erred in admitting evidence that Ferrell and Hartley robbed the victim two days before the murder; (3) the trial judge erroneously admitted, as an excited utterance, a statement made by the victim regarding the robbery that occurred two days before the victim was murdered; (4) insufficient evidence exists to support Ferrell's first-degree murder conviction; (5) insufficient evidence exists to support Ferrell's armed robbery conviction; (6) the trial judge erred in sentencing Ferrell as a habitual felony offender; (7) the trial judge erroneously instructed the jury on CCP; (8) the trial judge erred in finding that the murder was CCP; (9) the trial judge erred in finding that the murder was committed for financial gain; (10) the trial judge erred in finding that this murder was HAC; (11) the trial judge improperly doubled the aggravating factors of kidnapping and committed for pecuniary gain; and (12) the trial judge erred in denying Ferrell's request for a special verdict.
Ferrell's first claim involves comments made by the trial judge to prospective jurors. During voir dire, a prospective juror indicated that she was recalling biblical sources to help her with her personal feelings on the death penalty. The trial judge then interjected comments before the prospective jurors regarding the origins of the commandment "thou shalt not kill." Specifically, the trial judge stated:
THE COURT: Let me add one thing here, counsel, every time this comes up we have different opinions about it.
This is not the first time this has come up during the course of a jury selection in a capital case.
Inquiry has been made over the last twenty or thirty years that both Hebrew and Christian scholars, they tell usthese are students who have been studying it for long yearsthey tell us in the original Bible, in Greek, Hebrew, and Arabic, the Ten Commandments say "Thou shalt not commit murder." It doesn't say anything about "Thou shalt not kill." It says, "Thou shall not commit murder." It does not say, "Thou shalt not kill."
That translation of the Hebrew, Greek and Arabic Bible have [sic] translated it from "murder" to "Thou shalt not kill." But in the original Bible it is, "Thou shall not commit murder."

*1328 And also when you saywhen attorneys ask you, can you sit in judgment, you are not talking about sitting in judgment of a person morally or socially or any other thing, but just make a determination of guilt or innocence. That is what you are asked to do, not with judgment.
With that proceed.
Counsel for Ferrell did not object to these comments by the trial judge. Ferrell now seeks reversal, claiming that these prejudicial comments were designed to influence the positions of potential jurors as to the acceptability of capital punishment. Ferrell asserts that the judge's unethical and biased comments deprived him of a fair trial. Although Ferrell concedes that this issue has not been preserved for appeal due to the lack of an objection, Ferrell contends that reversal is required because the error is fundamental.
Without question, trial judges and attorneys should refrain from discussing religious philosophy in court proceedings. In a somewhat analogous situation, the California Supreme Court reviewed comments by a prosecutor, in which the prosecutor relied on this same commandment in seeking the death penalty.
This is precisely the sort of appeal to religious principles that we have repeatedly held to be improper. As we explained recently in [People v. Sandoval, 4 Cal.4th 155, 14 Cal.Rptr.2d 342, 362-64, 841 P.2d 862, 883-84 (1992), affirmed sub nam. Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)]: "What is objectionable is reliance on religious authority as supporting or opposing the death penalty. The penalty determination is to be made by reliance on the legal instructions given by the court, not by recourse to extraneous authority."
... The primary vice in referring to the Bible and other religious authority is that such argument may "diminish the jury's sense of responsibility for its verdict and... imply that another, higher law should be applied in capital cases, displacing the law in the court's instructions." [People v. Wrest, 3 Cal.4th 1088, 13 Cal.Rptr.2d 511, 519, 839 P.2d 1020, 1028 (1992), cert. denied, 510 U.S. 848, 114 S.Ct. 144, 126 L.Ed.2d 106 (1993)]. The prosecutor here invoked the Bible to demonstrate the legitimacy of capital punishment, and even implied that defendant deserved death under God's law: "God recognized there'd be people like Mr. Wash... Who must be punished for what they have done ... must forfeit their lives for what he's done." This was improper.
People v. Wash, 6 Cal.4th 215, 24 Cal.Rptr.2d 421, 448-50, 861 P.2d 1107, 1135-36 (1993) (citations omitted), cert. denied, ___ U.S. ___, 115 S.Ct. 116, 130 L.Ed.2d 62 (1994). Although the Court strongly criticized the prosecutor's statements, it found them to be harmless when viewed in context with the entire record. Further, as here, no objection was made to the comments and the error was consequently not preserved for review. We likewise agree that the judge's brief discussion was harmless when viewed in light of the entire record. In fact, the judge's comment in this case was much less egregious than that being reviewed by the California Supreme Court in Wash. Consequently, we reject Ferrell's argument that this error is a fundamental one requiring reversal.
In his next claim, Ferrell asserts that the trial judge erred in admitting evidence that Ferrell and Hartley robbed the victim two days before the murder. Ferrell argues that evidence of this collateral crime constituted inadmissible Williams[2] rule evidence because the crime was not sufficiently similar to the instant case to have been admitted. Ferrell also contends that the crime was not relevant to the proof of any issue at trial. We disagree on both counts. As we stated in Hartley v. State, 686 So.2d 1316 (Fla.1996):
Under [section 90.404(2)(a), Florida Statutes (1995)], evidence of other crimes is *1329 admissible only if it is "similar fact evidence." Griffin v. State, 639 So.2d 966 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995); Drake v. State, 400 So.2d 1217 (Fla.1981). Clearly, under the circumstances set forth in this record, evidence that Hartley had robbed the victim in this case two days before the murder was not similar fact evidence, and, thus, was inadmissible under section 90.404(2)(a). This does not mean, however, that evidence of other crimes is never admissible unless it is similar. Rather, evidence of other crimes that are "inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged," is admissible under section 90.402 (admissibility of relevant evidence) because it is relevant and necessary to adequately describe the crime at issue. Griffin, 639 So.2d at 968; Bryan v. State, 533 So.2d 744 (Fla.1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989).
Op. at 1320. Here we find that evidence of the robbery was properly admitted to complete the story of the crime on trial and to explain Ferrell's motivation in seeking to prevent retaliation by the victim.
Third, Ferrell claims that the trial judge erroneously admitted, as an excited utterance, a statement made by the victim regarding the prior robbery. We find Rogers v. State, 660 So.2d 237 (Fla.1995), to be dispositive of this issue. Rogers involved circumstances wherein an individual ran from the scene of a crime, went immediately to a nearby apartment, banged on the door, used the telephone to call the police, and then made statements to others in the apartment regarding the crime. The statements the individual made to others in the apartment were admitted as excited utterances. We upheld the admission of those statements, finding that they met the three-prong test for admission as an excited utterance: (1) startling event; (2) no time for reflection; and (3) statement made while the person was under the stress of the excitement from the startling event. This case involves facts almost identical to those in Rogers. Lynwood Smith testified that two days before the victim's death, the victim ran into Smith's apartment claiming that he had just been robbed; that the victim appeared upset, angry, and excited; that the victim was still bleeding from wounds he received during the crime; and that the victim told him he had been robbed by codefendant Hartley. As in Rogers, we find that the trial judge properly admitted the witness's testimony of statements made by the victim as an excited utterance.
In his fourth and fifth claims, Ferrell claims that there is insufficient evidence to support his first-degree murder and armed robbery convictions. We find these claims to be without merit. Two witnesses placed Ferrell in the victim's automobile as it sped toward the murder site; the victim was forced at gunpoint by Ferrell and Hartley to drive to the field where the crimes took place; just before the murder the victim was seen with a large sum of cash and drugs, and those items were not found on the victim after the murder; and Ferrell confessed to a cellmate that he was a party to the premeditated murder and that they robbed the victim of drugs and money. We find this evidence sufficient to support both convictions beyond a reasonable doubt. As provided by section 777.011, Florida Statutes (1995):
Principal in first degree.Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.
While Ferrell may not have actually pulled the trigger, the evidence establishes that he played a integral part in these crimes and in actually luring the victim to his death. Thus, at a minimum, he is guilty as a principal under the statute. Terry v. State, 668 So.2d *1330 954 (Fla.1996); Staten v. State, 519 So.2d 622 (Fla.1988).
In his sixth claim, Ferrell states that the trial judge erred in sentencing Ferrell as a habitual felony offender to consecutive sentences for the robbery and kidnapping convictions. As conceded by the State, this was error under Hale v. State, 630 So.2d 521 (Fla.1993), cert. denied, ___ U.S. ___, 115 S.Ct. 278, 130 L.Ed.2d 195 (1994), which provides that such sentences must run concurrently rather than consecutively. Accordingly, we direct the trial court to amend the sentencing order to provide that these two sentences run concurrently rather than consecutively.
Next, Ferrell contends that the trial judge erroneously instructed the jury on the aggravating factor of CCP. The jury instruction provided in this case on CCP was found to be unconstitutional in Jackson v. State, 648 So.2d 85 (Fla.1994). We conclude, however, that this issue is procedurally barred because defense counsel specifically agreed to the instructions provided.
Ferrell also claims that the trial judge erred in finding the murder to be CCP. We disagree. The facts of this case reflect that Ferrell and the other defendants obtained a gun and a getaway vehicle in advance; that they took the victim to a remote area where there would be no witnesses; and that they shot the victim execution-style to prevent him from identifying codefendants Hartley and Johnson as participants in the earlier robbery. The defendants did not act out of emotional frenzy or panic; this was a coldly and carefully prearranged design to kill the victim without any pretense of moral or legal justification.[3]
In his ninth claim, Ferrell argues that the trial judge erred in finding that that the murder was committed for financial gain. As we stated above, sufficient evidence existed to support the armed robbery conviction. That same evidence is sufficient to support this aggravating circumstance. The record reflects that a necessary component of the plan to murder the victim was for Ferrell to determine in advance that the victim possessed a large quantity of crack cocaine, and, as noted by the trial judge, the gain of drugs and money was an integral part of Ferrell's plan.
Ferrell also argues that the trial judge erred in finding that this murder was HAC. We agree with this contention. As we noted in Hartley:
In order for the HAC aggravating circumstance to apply, the murder must be conscienceless or pitiless and unnecessarily torturous to the victim. Richardson v. State, 604 So.2d 1107 (Fla.1992). Execution-style killings are not generally HAC unless the state has presented other evidence to show some physical or mental torture of the victim. In this case the medical examiner could not determine the order in which the shots had been fired and there is no evidence that Hartley deliberately shot the victim to cause him unnecessary suffering. In fact, the evidence reflects that the murder was carried out quickly. Speculation that the victim may have realized that the defendants intended more than a robbery when forcing the victim to drive to the field is insufficient to support this aggravating factor.
Op. at 1324. Nevertheless, we find this error to be harmless beyond a reasonable doubt in light of the four remaining valid aggravating factors (CCP, prior violent felonies, committed during the course of a kidnapping, and committed for financial gain) and minimal mitigation.
In his next claim, Ferrell argues that the trial judge improperly doubled the aggravating factors of committed during a kidnapping and committed for pecuniary *1331 gain. As we did in Hartley, we find that these two aggravators are not based on the same essential feature of the crime or of the offender's character. See, e.g., Echols v. State, 484 So.2d 568 (Fla.1985), cert. denied, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 166 (1986). Consequently, we reject this claim.
We also note that the sentence of death in this case is appropriate even though Ferrell was not the shooter and even though Johnson received a sentence of life-imprisonment. First, Ferrell played an integral part in planning and carrying out the murder. Moreover, Ferrell used his friendship with the victim to lure him to his death. Johnson merely provided the getaway vehicle after the crime was committed. We have previously determined that death is the appropriate sentence under similar circumstances. Diaz v. State, 513 So.2d 1045 (Fla.1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1022 (1988); Engle v. State, 510 So.2d 881 (Fla.1987), cert. denied, 485 U.S. 924, 108 S.Ct. 1094, 99 L.Ed.2d 256 (1988).
In his final claim, Ferrell claims that the trial judge erred in denying his request for a special verdict form. This claim is without merit. See Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989).
Accordingly, we affirm Ronnie Ferrell's convictions for armed robbery, armed kidnapping, and first-degree murder, and his sentence of death for the first-degree murder conviction. As to the sentences for the armed robbery and armed kidnapping convictions, we remand this case to the trial court with instructions that Ferrell's habitual offender sentences be ordered to run concurrently rather than consecutively.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Hartley's convictions and sentence of death have now been upheld by this Court in Hartley v. State, 686 So.2d 1316 (Fla.1996).
[2] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[3] Ferrell also takes issue with a statement in the trial judge's sentencing order, which states that the victim "was shot execution stylewhich was fired by the defendant at a distance of one inch." (Emphasis added.) This is obviously a typographical error. The sentencing order otherwise clearly identifies codefendant Hartley as the shooter.