686 So.2d 1316 (1996)
Kenneth HARTLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 83021.
Supreme Court of Florida.
September 19, 1996.
Rehearing Denied January 31, 1997.
*1318 Nancy A. Daniels, Public Defender and David A. Davis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Kenneth Hartley appeals his convictions and sentences for armed robbery, armed kidnapping, and first-degree murder, including a sentence of death for the first-degree murder conviction. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm Hartley's convictions and sentences.
The record reflects the following facts. Hartley, Ronnie Ferrell, and Sylvester Johnson were all convicted of the first-degree murder, robbery, and kidnapping of seventeen-year-old Gino Mayhew (the victim). They were each tried separately. Ferrell was convicted as charged and sentenced to death for the first-degree murder conviction.[1] Johnson was convicted and sentenced to life imprisonment. The following evidence was presented at Hartley's trial.
Sidney Jones worked for the victim in the victim's crack cocaine business. He testified to the following information. On April 22, 1991, the victim was selling crack from his Chevrolet Blazer at an apartment complex. On that date, Jones saw the three codefendants together near the Blazer. He saw Hartley holding a gun to the victim's head and saw him force the victim into the driver's seat. Hartley climbed into the back seat behind the victim. Ferrell climbed into the front, passenger seat. Johnson was outside the Blazer talking to Hartley. After Hartley, Ferrell, and the victim entered the Blazer, Jones saw it leave the apartment complex at a high speed and heard Ferrell shout out of the Blazer that the victim would "be back." Johnson followed soon afterward in a truck.
Another witness confirmed that the victim, Ferrell, and another individual, whom the witness was unable to positively identify, left the apartment complex together in the victim's Blazer at a high rate of speed.
On April 23, police found the victim's Blazer parked in a field behind an elementary school. The victim's body was slumped over in the driver's side seat of the Blazer. The victim had died as a result of bullet wounds to the head (he had been shot five times: one shot into his forehead, three shots into the back of his head, and one shot into his shoulder).
Several weeks after the victim was found, Jones told police what he had seen on April 22, and Ferrell, Hartley, and Johnson were arrested for the victim's murder. Hartley told police that he did not know the victim but told several other witnesses that he had robbed the victim two days before the murder. Specifically, he told one witness that "the only reason they [are] saying that [I killed the victim] is because I robbed him two days before he was killed." Hartley later told the witness (who at the time of the second statement was Hartley's cellmate) that the plan was Sylvester Johnson's; that they originally planned to rob some "dreads" but then decided to "get [the victim]," i.e., rob and murder the victim; that they forced the victim to drive to the elementary school; that Johnson drove the getaway vehicle; that "I left my trade mark, left no witnesses"; and that his trademark was to "shoot the person in the head leaving no witnesses." He also told the witness that Ferrell and Johnson acted so nervous that he considered shooting them and that he would "get off" because everyone was too scared to testify. *1319 A number of the details provided by this witness were never released to the public.
Additionally, Hartley told another cellmate that he was not involved in the murder but that he had robbed the victim a few days before the murder. He later admitted to the cellmate that he had robbed and murdered the victim and provided numerous details of the crime very similar to those provided by the previous witness.
Another witness testified that he heard Hartley state: "I think I really fucked up this time by doing this with that motherfucker Ferrell. I think he's going to turn on me and testify against me when he's just as guilty in doing this as I am."
Each of these last three witnesses had been convicted of various felony charges and were awaiting sentencing at the time they testified. They were to receive negotiated pleas in exchange for their testimony, but their sentences were potentially lengthy ones (up to twenty-five years, thirty years, and fifteen years, respectively).
The defense presented no evidence in the guilt phase and Hartley was convicted of armed robbery, armed kidnapping, and first-degree murder.
At the penalty phase, the State introduced evidence of Hartley's three prior violent felony convictions: a 1986 manslaughter conviction for killing a fifteen year-old girl with a shotgun; a 1991 conviction for the armed robbery of a taxi driver; and a second 1991 conviction for the armed robbery of another taxi driver.
Hartley presented two witnesses in his defense. An attorney testified regarding fifteen-year and twenty-five-year mandatory minimum sentences. A pastor testified that he had known Hartley since 1980, that he had a quiet and peaceful spirit, that he attended church off and on, that he came from a good family, and that he was intelligent.
The jury recommended the death penalty by a nine-to-three vote, and the trial judge sentenced Hartley to death. The trial judge found six aggravating circumstances (prior violent felony conviction; committed during the course of a kidnapping; committed to prevent a lawful arrest; committed for pecuniary gain; heinous, atrocious, or cruel (HAC); and cold, calculated, and premeditated (CCP)). He found minimal mitigation. The trial judge sentenced Hartley to consecutive sentences for the other two convictions: fifteen years as a habitual felony offender for the armed robbery conviction and life imprisonment for the armed kidnapping conviction.
In this appeal, Hartley raises eleven issues, claiming that: (1) the trial judge erred in admitting a police officer's statement regarding a robbery committed against the victim two days before the victim was murdered; (2) the trial judge improperly excluded the testimony of a witness regarding a letter purportedly containing a confession by another individual as to this crime; (3) the trial judge improperly denied Hartley's motion for mistrial, which was based on improper prosecutorial statements during opening; (4) the trial judge improperly excluded testimony from Sidney Jones concerning the name of the police officer to whom he reported; (5) the trial judge erred in finding that the State had a race-neutral reason for excluding a prospective juror; (6) the trial judge erred in excusing a prospective juror for cause because the juror was against imposition of the death penalty; (7) the trial judge erroneously instructed the jury on the aggravating circumstance of CCP; (8) the trial judge erred in finding the murder to be CCP; (9) the trial judge erroneously doubled the aggravating circumstances of committed for pecuniary gain and committed during the course of a kidnapping; (10) the trial judge erroneously instructed the jury on the aggravating circumstance of HAC; and (11) the trial judge erred in finding the murder to be HAC.
In his first claim, Hartley contends that the State was improperly allowed to introduce the testimony of a police officer at trial regarding Hartley's arrest. The police officer testified that when he arrested Hartley and Ferrell for the victim's murder, Hartley *1320 denied knowing the victim. The police officer then testified that he told Hartley they knew he had robbed the victim two days before the murder. The trial judge allowed this testimony, over defense counsel's objection, as relevant Williams[2] rule evidence under section 90.404(2)(a), Florida Statutes (1995)(similar fact evidence). According to Hartley, this testimony constituted inadmissible and irrelevant prejudicial evidence regarding a dissimilar prior crime, which was introduced simply to prove propensity and bad character.
Section 90.404(2)(a), provides as follows:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Under this statute, evidence of other crimes is admissible only if it is "similar fact evidence." Griffin v. State, 639 So.2d 966 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995); Drake v. State, 400 So.2d 1217 (Fla.1981). Clearly, under the circumstances set forth in this record, evidence that Hartley had robbed the victim in this case two days before the murder was not similar fact evidence, and, thus, was inadmissible under section 90.404(2)(a). This does not mean, however, that evidence of other crimes is never admissible unless it is similar. Rather, evidence of other crimes that are "inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged," is admissible under section 90.402 (admissibility of relevant evidence) because it is relevant and necessary to adequately describe the crime at issue. Griffin, 639 So.2d at 968; Bryan v. State, 533 So.2d 744 (Fla.1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989).
Applying this standard, we find that the testimony of the officer should not have been admitted. The officer was not testifying to the fact that Hartley admitted robbing the victim; the officer was merely repeating the officer's own statement that he knew Hartley robbed the victim two days before the murder. Under the circumstances of this case, however, we do not find that this error warrants reversal of Hartley's conviction. In Hartley's own admissions to other witnesses, he stated that "the only reason they [are] saying that [I killed the victim] is because I robbed him two days before he was killed." This testimony was properly introduced through two other witnesses as after-the-fact evidence of a desire to evade prosecution, which is relevant to the consciousness of guilt. Anderson v. State, 574 So.2d 87 (Fla.), cert. denied, 502 U.S. 834, 112 S.Ct. 114, 116 L.Ed.2d 83 (1991). Moreover, Hartley's own counsel made reference to this robbery during opening statements when he told the jury:
And I might add there are a couple of other informants that appeared along this same line that couldn'tdidn't mention in fact an informant showed up, the police went out, thought it might be a suspect in this case turned around and talked about yet a second robbery accusing Kenneth Hartley of being involved, same guy, [the victim], two nights ago, two nights before this. Maybe we'll hear about it, maybe we won't, maybe counsel is not going to put that evidence on.
In sum, because defense counsel himself told the jury about the robbery and because other witnesses properly testified about Hartley's own statements regarding the robbery, we do not find the admission of the police officer's statement constituted harmful error.
Next, Hartley contends that the trial judge improperly excluded the testimony of *1321 Ronald Wright regarding a letter Wright received from Hank Evans, in which Evans purportedly confessed to murdering the victim. In the letter, Evans stated: "You was my home-boy and I never told you a thing about that Sherwood Blazer tip until we got to Lake Butler and shit had cleared up." The State moved to exclude this evidence and the trial judge granted the State's motion after finding the testimony to be inadmissible hearsay. Hartley acknowledges that the testimony constitutes inadmissible hearsay, but contends that the testimony should have been introduced under Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)(on rare occasions the strict requirements of the evidence code should be set aside in the interests of justice). We disagree.
The trial judge rejected the Chambers argument after finding that Wright's testimony was unreliable and untrustworthy and that no evidence corroborated Evans's alleged confession. The testimony at the pretrial hearing on this issue revealed that Wright submitted the letter but refused to testify until his own cases were resolved. When Wright eventually did testify, he stated that Evans told him the following facts about the murder: that Evans shot the victim outside a convenience store; that Evans was standing outside the car when he shot the victim, who was in the driver's seat; and that Evans moved the victim to the passenger's seat and drove the vehicle to the field where he left it. Wright also stated that he knew Evans was listed as a witness against him. Evans, on the other hand, testified that he discussed rumors he had heard about this case with Wright but that he never confessed to him. Additionally, Evans testified that his letter to Wright was in response to a letter he had received from Wright asking him not to testify against him. The trial judge also considered testimony from a number of others, including two individuals who overheard Wright state that he was going to lie for Hartley by stating that someone else had confessed to killing the victim. Based on this evidence, we find that the trial judge properly found the evidence to be unreliable and inadmissible under Chambers.
In his third claim, Hartley asserts that he is entitled to a new trial based on improper prosecutorial statements. During opening statements, the prosecutor stated: "I submit to you the evidence will show that [Hartley] was the area tough guy, people in the area where this occurred were afraid of him." Defense counsel objected and moved for a mistrial. The trial judge sustained the objection and told the jury to disregard the comment, but denied the motion for mistrial. The prosecutor then made another similar comment, which the judge also struck, finding that these types of comments should be made during closing argument rather than opening statement. Because the State cannot comment or introduce evidence regarding a defendant's character unless the defense has first made an issue of the defendant's character, Hartley argues that these prejudicial remarks entitle him to a new trial.
The State made these comments in attempting to explain that its witnesses had refused to come forward immediately because they were afraid of Hartley. While Hartley concedes that this is a valid reason for admitting this type of evidence, Morgan v. State, 603 So.2d 619 (Fla. 3d DCA 1992), Hartley asserts that the State never produced any evidence to reflect that the witnesses were afraid of Hartley or that Hartley was "the area tough guy." We find no merit to this argument. A number of the witnesses testified that they did not come forward immediately because they were afraid. Moreover, Hartley himself made statements to witnesses that he hoped to get away with the crime because the witnesses were afraid to testify. Because evidence was admitted to support the comments made by the State in opening, we do not find that the comments entitle Hartley to a new trial.
In his next claim, Hartley claims that the trial judge improperly excluded testimony from Sidney Jones concerning the name of the police officer to whom he reported as a *1322 confidential informant. Jones testified that he was a confidential informant for the police and that he had a police officer's beeper number. Defense counsel asked Jones to reveal the name of the police officer; Jones stated that he would rather not answer that question and the State objected to the introduction of that testimony as being irrelevant. Hartley asserts that the judge should have required Jones to answer the question because it could have shown that Jones was lying and would have allowed defense counsel to verify whether Jones was working for the police. As noted by the State, Jones did provide the police officer's name during a deposition and verification of Jones's story could have been conducted at that time. Additionally, the point of defense counsel's questioning was to show that Jones had quick access to police and that he could have contacted them immediately after seeing Hartley point the gun at the victim rather than waiting until after the murder. The name of the officer was not relevant to that issue. As such, we find this issue to be without merit.
Fifth, Hartley claims that the trial judge erred in finding that the State had a race-neutral reason for excusing a prospective juror. One of the prospective jurors in this case was an African-American who worked for a social services agency and had a master's degree in psychology. When asked about her views on the death penalty, she stated that she was against it because she thought people could be rehabilitated in some other form. She later stated that she would have to see the evidence before determining whether the death penalty would be appropriate. The State peremptorily challenged the prospective juror. When challenged, the State responded that her negative feelings about the death penalty and her line of work raised concerns about her ability to impose the death penalty. The judge found these reasons to be racially neutral. Hartley contends that these reasons were insufficient to establish a race-neutral basis for challenging the juror. According to Hartley, this Court rejected a similar argument in State v. Slappy, 522 So.2d 18 (Fla.)(simple assumption that a teacher was "liberal" was an insufficient reason, without record support, to justify the peremptory challenge), cert. denied. 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988).
This Court has repeatedly held that a prospective juror's view against the death penalty is a legitimate, race-neutral reason for a peremptory challenge. Walls v. State, 641 So.2d 381 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995); Atwater v. State, 626 So.2d 1325 (Fla.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). Here, the juror specifically stated that she was against the death penalty. That reason was sufficient to provide a race-neutral reason for the peremptory challenge.
In his sixth claim, Hartley raises a similar issue in which he contends that the trial judge erred in excusing a prospective juror for cause because the juror was against the imposition of the death penalty. We find this claim to be without merit. The juror stated that there were very few, if any, situations in which he would recommend the death penalty. After further questioning, the juror stated that his beliefs regarding the death penalty would substantially impair his ability to impose the death penalty. This constituted sufficient justification to excuse the juror for cause. Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).
Next, Hartley argues that the trial judge erroneously instructed the jury regarding the aggravating factor of CCP. The jury instruction provided in this case on CCP was found to be unconstitutional in Jackson v. State, 648 So.2d 85 (Fla.1994). We conclude, however, that this issue is procedurally barred because Hartley merely objected to the constitutionality of the CCP aggravator generally. He did not object to the form of the instruction given, nor did he submit a limiting instruction. Crump v. State, 654 So.2d 545 (Fla.1995)(objection at trial must *1323 attack the instruction itself, either by submission of a limiting instruction or by an objection to the instruction as worded). In this case, as in Crump, Hartley's objection to the CCP instruction concerned the constitutionality of the aggravating factor itself and whether CCP applied to his case.
In a related claim, Hartley contends that the trial judge erroneously found this murder to be CCP. In his sentencing order, the trial judge stated that Hartley "planned to kidnap, rob, and murder [the victim] so he could not retaliate for [the] earlier robbery." As Hartley correctly points out, no record support exists for this conclusion. Although testimony in this case revealed that an earlier robbery did occur, there was no specific testimony to support a finding that the murder in this case was to prevent retaliation for the earlier robbery. This record reflects that the original plan was to rob some "dreads," but that the defendants then decided to "get [the victim]." Apparently, in his sentencing order, the trial judge confused the facts presented in this case with the facts presented in codefendant Ferrell's case in which testimony was presented to show that the victim was executed to prevent retaliation. See Ferrell v. State, 686 So.2d 1324 (Fla.1996). Consequently, we conclude that the trial judge erred in relying on these facts, as stated in the sentencing order, in finding this murder to be CCP. Nevertheless, we find this error to be harmless beyond a reasonable doubt given that we find other record evidence to support the conclusion that this murder was CCP. Hartley obtained a gun and a getaway vehicle in advance; he did not act out of frenzy, panic, or rage; he forced the victim to drive to a remote area where there would be no witnesses; he shot the victim five times execution-style; and he told a witness that he and the other defendants decided to "get [the victim]." Consequently, we reject the claim that this murder was not CCP.
In his ninth claim, Hartley asserts that the trial judge erroneously doubled the aggravating circumstances of committed for pecuniary gain and committed during the course of a kidnapping. This argument has been consistently rejected by this Court. Preston v. State, 607 So.2d 404 (Fla.1992), cert. denied, 507 U.S. 999, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993); Bryan; Routly v. State, 440 So.2d 1257 (Fla.1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984). Hartley's assertion that a contrary conclusion is compelled by Green v. State, 641 So.2d 391 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1120, 130 L.Ed.2d 1083 (1995), is misplaced. In Green we stated in dicta that, had the sole purpose of the kidnapping been to rob the victim, we would have resolved this issue differently. Here, however, as set forth under the CCP discussion above, the victim was kidnapped, taken to a field, and robbed and murdered after Hartley and the other defendants decided to "get" the victim.
Hartley's final two claims concern the aggravating factor of HAC. Hartley claims that the judge provided an unconstitutional HAC instruction to the jury and erroneously found the murder to be HAC. We reject the claim that the instruction was erroneous. The instruction provided was approved by this Court in Hall v. State, 614 So.2d 473 (Fla.), cert. denied, 510 U.S. 834, 114 S.Ct. 109, 126 L.Ed.2d 74 (1993). We agree, however, that the trial judge improperly found the murder to be HAC. In order for the HAC aggravating circumstance to apply, the murder must be conscienceless or pitiless and unnecessarily torturous to the victim. Richardson v. State, 604 So.2d 1107 (Fla.1992). Execution-style killings are not generally HAC unless the state has presented other evidence to show some physical or mental torture of the victim. In this case the medical examiner could not determine the order in which the shots had been fired and there is no evidence that Hartley deliberately shot the victim to cause him unnecessary suffering. In fact, the evidence reflects that the murder was carried out quickly. Speculation that the victim may have realized that the defendants intended more than a robbery *1324 when forcing the victim to drive to the field is insufficient to support this aggravating factor. Nevertheless, we find this error to be harmless beyond a reasonable doubt in light of the five remaining valid aggravating factors (CCP; prior violent felony convictions; committed during the course of a kidnapping; committed to prevent a lawful arrest; and committed for pecuniary gain) and minimal mitigation.
Accordingly, we affirm Kenneth Hartley's convictions and sentences for armed robbery, armed kidnapping, and first-degree murder, including the sentence of death for the first-degree murder conviction.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Ferrell's convictions and sentence of death have been upheld by this Court in Ferrell v. State, 686 So.2d 1324 (Fla.1996).
[2] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).