990 So.2d 1008 (2008)
Kenneth HARTLEY, Appellant,
v.
STATE of Florida, Appellee.
No. SC04-1387.
Supreme Court of Florida.
May 22, 2008.
Rehearing Denied September 10, 2008.
*1009 Harry P. Brody and Jeffrey M. Hazen of Brody and Hazen, P.A., Tallahassee, FL, for Appellant.
Bill McCollum, Attorney General, and Meredith Charbula, Assistant Attorney General, Tallahassee, FL, for Appellee.
*1010 PER CURIAM.
Kenneth Hartley appeals an order denying his motion to vacate his conviction of first-degree murder and sentence of death. This Court has jurisdiction. See art. V, § 3(b)(1), Fla. Const. Having reviewed the briefs and heard oral argument in the case, we hold (1) that Hartley failed to demonstrate that trial counsel provided ineffective assistance during the penalty phase by failing to call certain witnesses or present a mental health expert; (2) that Hartley did not preserve his claim that newly discovered evidence shows the State presented false or misleading evidence at trial; and (3) that Hartley's claim that collateral counsel provided ineffective assistance is not a cognizable claim. Accordingly, we affirm the circuit court's order denying relief. Below, we first provide the relevant facts and procedural history of Hartley's case, and then analyze each of Hartley's claims of error.

I. FACTS AND PROCEDURAL HISTORY
Hartley was convicted of the first-degree murder, armed robbery, and armed kidnapping of seventeen-year-old Gino Mayhew. Hartley v. State, 686 So.2d 1316, 1318 (Fla.), cert. denied, 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997). At trial, the evidence showed that on the evening of April 22, 1991, the defendant then twenty-four years oldand two other men (Ronnie Ferrell and Sylvester Johnson) forced Mayhew, a local drug dealer, into his car. Hartley and Ferrell also got into the car, and Johnson followed in another vehicle. Mayhew's body was found the next day in his car. He had been shot four times in the head.[1]
The jury recommended a sentence of death. In imposing that sentence, the trial court found six aggravating circumstances: that the defendant had prior violent felony convictions (a 1986 manslaughter conviction and two 1992 armed robbery convictions); that the murder was committed during the course of a kidnapping; that the murder was committed to prevent a lawful arrest; that the murder was committed for pecuniary gain; that the murder was especially heinous, atrocious, or cruel (HAC); and that the murder was cold, calculated, and premeditated (CCP). The court assigned great weight to each aggravator and found that each, standing alone, outweighed the little mitigation the court found and to which it assigned only slight weight.
On appeal, Hartley raised eleven issues.[2]Hartley, 686 So.2d at 1319. Although we found that the trial court erred in finding that the HAC aggravator applied, we nevertheless affirmed both the conviction and *1011 the sentence, finding any error harmless. See id. at 1320, 1323-24.
Subsequently, the Capital Collateral Regional Counsel-North (CCRC-North) filed a shell motion under Florida Rule of Criminal Procedure 3.850 on Hartley's behalf. Later, Hartley's appointed counsel, Jefferson Morrow, filed amended motions. The circuit court held an evidentiary hearing on three claims in the amended motion: trial counsel's failure (1) to call certain witnesses in the penalty phase, (2) to prepare for the penalty phase, and (3) to use a mental health expert. Morrow later was granted permission to withdraw, and with the court's permission, Hartley hired Kenneth Malnick as counsel. Malnick also filed supplemental claims to the postconviction motion. The circuit court eventually denied all of Hartley's claims.[3]

II. THE ISSUES ON APPEAL
Although Hartley's amended motion for postconviction relief presented more than thirty claims, he has expressly waived appeal of the majority of them. Below, we analyze the three issues he does raise.

A. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
Hartley first contends that during the penalty phase, trial counsel provided ineffective *1012 assistance by (1) failing to present the additional mitigation testimony of Hartley's brother and various other people with knowledge of the defendant, and (2) failing to obtain a mental health expert. We address each claim in turn.

1. Failure to Present Additional Mitigation Testimony
Hartley first argues that counsel was ineffective for failing to present several additional witnesses at the penalty phase to testify about Hartley's background. Because Hartley fails to show either that the witnesses were ready, willing, and able to testify at trial or that counsel's failure to present them prejudiced Hartley, we reject this claim.
During the penalty phase, two witnesses testified on Hartley's behalf. An attorney testified to the extensive amount of time that Hartley would serve in light of the habitual violent felony offender sentence imposed in an armed robbery case, the potential for a similar sentence in another armed robbery case, and the twenty-five-year mandatory minimum sentence on a life sentence for murder. Then the Reverend Coley Williams, who had known Hartley and his family since Hartley was about ten years old, testified that Hartley was intelligent, had a quiet and peaceful spirit, intermittently attended church, and came from a good family. Further, the minister had regularly spoken to Hartley while Hartley was previously imprisoned on a manslaughter charge and had seen or spoken to him several times after his release in 1991.
At the postconviction evidentiary hearing, Hartley's trial counsel testified that in order to humanize Hartley, he sought to have family members testify at the penalty phase, but none were willing. His efforts to meet with or talk with family members failed as they did not keep their appointments or did not respond to phone calls. Hartley's sister Cheryl told trial counsel that once Hartley was convicted, the family was no longer willing to support him. Regarding Hartley's brother, Shawn Jefferson (a professional football player), counsel was specifically informed that he was not available to testify because of his career demands. Regarding other witnesses presented at the postconviction hearing, trial counsel did not recall being informed of their existence.
Some of Hartley's family members also testified at the evidentiary hearing. Hartley's brother Jefferson testified to the close relationship he had with Hartley growing upgoing to school, singing in the church choir, and playing sportsand that Hartley inspired and encouraged him. When Jefferson went to college, Hartley went to prison for manslaughter. Jefferson did not attend the trial because he and his family agreed that, as he had an extended family to support, he should concentrate on establishing his pro football career. Hartley's sister Cheryl Daniels served as the family's liaison with trial counsel, whom she had recommended because he once represented her. She said she was not asked to testify at trial but would have said that Hartley is a "jokeable person," a "good brother," and that he cared about the elderly. Hartley's mother testified that Hartley asked her not to attend the trial, and so she did not. She would have testified at the penalty phase that she raised Hartley and Jefferson the same waywith love and discipline and insistence on church and school attendance. When Hartley got older, however, she could no longer handle him.
Several other character witnesses testified. Coach Freddie Stevens, who knew Hartley for a year when Hartley was in his high school physical education class, testified that Hartley was "mannerable and cooperative." Denise Groomes said she *1013 feared attending the trial, but she would have testified that Hartley was "mannerable," had "ethical values," and attended church. Her sister Tanya Hawke testified that she had had a crush on Hartley since third grade, and he always "help[ed] out." Groomes's other sister, Dorothy Cherry, testified that she was in Atlanta during the trial and did not want to be involved, but she thought Hartley was a "great guy."
We review claims of ineffective assistance of counsel under the two-pronged standard established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must point to specific acts or omissions of counsel that are "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. 2052. In addition, the defendant must establish prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. Claims of ineffective assistance of counsel present mixed questions of law and fact subject to plenary review. Occhicone v. State, 768 So.2d 1037, 1045 (Fla.2000). This Court independently reviews the trial court's legal conclusions and defers to the trial court on questions of fact and credibility.
In ruling on Hartley's claims of ineffectiveness for failing to call these witnesses, the trial court found that the witnesses presented at the evidentiary hearing were "either unwilling or unavailable to testify" at the penalty phase of trial. The court also found no prejudice under Strickland's second prong. The court concluded that even if the witnesses had testified, "there is no reasonable probability that the balancing of aggravating and mitigating factors would have resulted in a life sentence."
We agree that Hartley has failed to meet either of Strickland's requirements. Competent, substantial evidence supports the postconviction court's conclusion that the witnesses were unwilling or unavailable to testify. The circuit court found trial counsel's testimony about his attempts to obtain witnesses, particularly family members, to be more credible than the testimony of the other witnesses. In addition, several witnesses gave contradictory statements about their availability to testify.
Even if Hartley had met the first prong, however, he has failed to demonstrate prejudice. Hartley's mother testified that she raised Jefferson and Hartley the same way, with emphasis on discipline, morals, knowing right from wrong, church, and education, but she could not control Hartley when he was older. Jefferson testified that his brother inspired and encouraged him. He also testified, however, that when he went to college Hartley went to prison for manslaughter. Jefferson stressed the responsibilities his own professional football career imposed on him and his attendant responsibility to support his extended family, which included paying for Hartley's trial counsel. Further, Jefferson went to church and actively participated in a variety of charitable activities. Had this testimony been presented in the penalty phase, the jury would have seen a stark contrast between the two brothers, who were close in age and raised together. In addition, all the other testimony from the postconviction hearing combined presents little of substance about Hartley's character. His friends, sister, and coach *1014 agreed that Hartley was "mannerable" and a "good guy" who cared about the elderly. Such generalities would add little to Reverend Williams's testimony at the penalty phase, which provided a more detailed and positive estimation of Hartley. In light of the five weighty aggravators in this case, the mitigation presented at the postconviction hearing fails to demonstrate prejudice.

2. Failure to Present a Mental Health Expert
Hartley also argues that trial counsel was ineffective for failing to have Hartley examined by a mental health expert and present the expert as a witness. In denying the claim, the trial court noted that the issue was set for evidentiary hearing, but no evidence was presented on it. The court is correct. The witnesses who testified at the hearing, including Hartley, his mother, his brother, and his sister, provided no evidence that Hartley had suffered any mental health or related problems, such as brain damage, low IQ, slow learning development, or abuse (sexual, physical, or neglect), or experienced problems with drugs, alcohol, or school work. Moreover, the transcript from the murder trial clearly indicates that trial counsel and Hartley discussed over a period of months whether to have Hartley examined by a mental health expert and decided not to do so. In light of Hartley's failure to present any evidence on the claim, we affirm the circuit court's conclusion that Hartley has failed to demonstrate either error or prejudice.
In light of the foregoing, we affirm the trial court's order denying Hartley's claims of ineffective assistance for failure to call certain penalty phase witnesses or to present the testimony of a mental health expert.

B. NEWLY DISCOVERED EVIDENCE
Hartley next contends that the court erred in denying his claim that the State violated Giglio v. United States, 405 U.S. 150, 153-54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), by knowingly presenting false testimony at trial. As we explain below, this issue was not preserved for review.
Hartley's postconviction motion contained a conclusory allegation that the State violated Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding unspecified material and exculpatory evidence and that the State presented false or misleading evidence. Another claim alleged, again in conclusory fashion, that unspecified newly discovered evidence made Hartley's conviction unreliable. Hartley later amended this claim with additional facts, but the trial court found and Hartley conceded the claim was insufficiently pled. Hartley later filed an emergency motion alleging, among other things, that he had discovered an unnamed witness who would testify that unnamed State witnesses perjured themselves at trial when they testified about Hartley's jailhouse confessions to them. The trial court continued the evidentiary hearing so that counsel could locate the witness. At first, the witness later identified as James Johnson refused to appear. Ultimately, he testified at the evidentiary hearing that after Hartley's trial, two trial witnesses admitted to him that they lied at trial and the prosecutor told them what to say. Hartley's argument here is based on Johnson's testimony at the evidentiary hearing.
This issue is procedurally barred. To the extent Hartley's postconviction motion raised a Giglio claim, he did not amend it with a sworn and legally sufficient claim. To the extent this is a newly discovered evidence claim, Hartley similarly did not amend his postconviction motion to raise *1015 it.[4] Further, the circuit court's order denying relief did not even mention Johnson's testimony or this claim, and Hartley did not identify this issue in his motion for rehearing. Thus, the court was never presented with and never ruled on the claim argued here. As a result, the claim is not cognizable on appeal. See Cave v. State, 899 So.2d 1042, 1052 (Fla.2005) (holding that because defendant did not raise a newly discovered evidence claim or amend his postconviction motion after the evidentiary hearing, the issue was not timely presented to the trial court and was not cognizable on appeal).
Even if the claim was preserved, it fails on the merits. A Giglio violation is demonstrated when (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor knew the testimony was false; and (3) the false evidence was material. Guzman v. State, 868 So.2d 498, 505 (Fla.2003). Once the defendant establishes the first two prongs, the false evidence is deemed material if there is any reasonable likelihood that the false testimony could have affected the jury's verdict. Thus, the State must prove that the false evidence was not material by demonstrating it was harmless beyond a reasonable doubt. Mordenti v. State, 894 So.2d 161, 175 (Fla.2004).
At Hartley's trial in August 1993, Ronald Bronner and Eric Brooks, both convicted felons and longtime friends of Hartley, testified that while they were in jail with Hartley, he admitted committing the murder. Both also testified that they had made sentencing deals with the prosecutor in exchange for their truthful testimony: Brooks would not be sentenced to more than thirty years on his armed robbery charge, and Bronner would not be sentenced to more than twenty-five years on his trafficking conviction.
At the postconviction evidentiary hearing, Johnson, also a convicted felon, testified that when he was in jail in the spring of 1993, Brooks and Bronnerseparately, but within the same weektold him that they lied at Hartley's trial and that in exchange for their testimony, they would go free. In repeated questioning, Johnson testified that Brooks and Bronner were released in the spring before his own release, which he was certain was in June 1993. Although Johnson lived in Hartley's neighborhood and they had mutual friends, Johnson did not come forward with this information until 2002.
Because the trial court did not rule on this claim, it made no credibility determinations or findings of fact. However, Johnson's vague allegations are simply insufficient to meet the first two prongs of Giglio. First, under Johnson's timeline, Brooks and Bronner's coincidental admissions to him of having given false testimony at Hartley's trial occurred several months before Hartley's trial. Johnson said Brooks and Bronner made deals and rehearsed their testimony with the prosecutor. However, prosecutors are permitted to discuss testimony with witnesses and to make sentencing deals in exchange for truthful testimony, and both Brooks and Bronner testified at trial regarding their agreements with the prosecutor. Importantly, Johnson said only that the pair told him they lied; thus, he did not know the substance of any lie or lies that they allegedly told. In addition, they testified at trial that their deals included lengthy sentences; thus, the deals clearly did not include going free as Johnson testified. Finally, we note that Johnson delayed nearly a decade before offering this vague testimony to aid Hartley. Hartley *1016 thus failed to demonstrate that the prosecutor knowingly presented false testimony at trial.

C. INEFFECTIVE ASSISTANCE OF COLLATERAL COUNSEL
Finally, Hartley argues that we should remand the case for new postconviction proceedings because postconviction counsel (Morrow and Malnick) failed to adequately investigate the case and to obtain a mental health expert. Hartley concedes that this Court has held, and, in fact, "all courts" have held, that the Sixth Amendment does not guarantee a right to the effective assistance of postconviction counsel. See Lambrix v. State, 698 So.2d 247, 248 (Fla.1996) ("[C]laims of ineffective assistance of postconviction counsel do not present a valid basis for relief."); see also Zack v. State, 911 So.2d 1190, 1203 (Fla. 2005) ("Under Florida and federal law, a defendant has no constitutional right to effective collateral counsel."). Hartley nevertheless contends that his case falls under a purported exception announced in Peede v. State, 748 So.2d 253 (Fla.1999).
Hartley misreads Peede. In that case, we specifically rejected the defendant's claim that "because both the State and the trial court had conceded the need for an evidentiary hearing, his due process rights were violated when the trial court reversed its earlier ruling and denied the evidentiary hearing." Id. at 256. Instead, we reviewed the circuit court's order summarily denying Peede's amended postconviction motion, examining each claim under the applicable standard of reviewi.e., to determine whether the claim was facially invalid or conclusively refuted by the record. Accordingly, we reversed in part as to those claims requiring an evidentiary hearing. Id. at 257.
In contrast, in this case the postconviction court scheduled and held an evidentiary hearing on several of Hartley's claims and continued the hearing over a number of months to accommodate counsel's search for witnesses. The record clearly reflects that both Morrow and Malnick hired investigators. Hartley's claim that trial counsel was ineffective for failing to obtain a mental health expert was specifically set for hearing. However, as explained previously, counsel did not present a mental health expert, and none of the witnesses at either the penalty phase or the postconviction hearing testified to any drug problems, juvenile delinquency, truancy, slow childhood development, special education needs, child abuse, traumatic injury, or any other mental-health-related area.
Despite Appellant's protestations to the contrary, his claims of an "inadequate" investigation and failure to obtain a mental health expert are claims of ineffective assistance of postconviction counsel. Such claims are not cognizable.[5]

III. CONCLUSION
For the foregoing reasons, we affirm the circuit court's order denying Hartley's amended motion for postconviction relief.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] A more detailed presentation of the facts is contained in our opinion affirming Hartley's conviction and sentence. See Hartley, 686 So.2d at 1318-19.
[2] Specifically, Hartley raised the following issues:

(1) the trial judge erred in admitting a police officer's statement regarding a robbery committed against the victim two days before the victim was murdered; (2) the trial judge improperly excluded the testimony of a witness regarding a letter purportedly containing a confession by another individual as to this crime; (3) the trial judge improperly denied Hartley's motion for mistrial, which was based on improper prosecutorial statements during opening; (4) the trial judge improperly excluded testimony from Sidney Jones concerning the name of the police officer to whom he reported; (5) the trial judge erred in finding that the State had a race-neutral reason for excluding a prospective juror; (6) the trial judge erred in excusing a prospective juror for cause because the juror was against imposition of the death penalty; (7) the trial judge erroneously instructed the jury on the aggravating circumstance of CCP; (8) the trial judge erred in finding the murder to be CCP; (9) the trial judge erroneously doubled the aggravating circumstances of committed for pecuniary gain and committed during the course of a kidnapping; (10) the trial judge erroneously instructed the jury on the aggravating circumstance of HAC; and (11) the trial judge erred in finding the murder to be HAC.
Hartley, 686 So.2d at 1319.
[3] Hartley's amended postconviction motion raised the following claims: that Hartley was denied an adversarial testing; that all claims in CCRC-North's motion warranted relief; that newly discovered evidence showed that trial witness Sidney Jones had a "testifying relationship" with the State; that Hartley's incriminating statements to cellmates should have been suppressed; that there is no reliable transcript; that the State introduced nonstatutory aggravators; that the State withheld material evidence; that the HAC aggravator was unsupported by the evidence; that the HAC instruction was unconstitutionally vague; that the CCP and pecuniary gain instructions were unconstitutionally vague and the findings unsupported by the evidence; that the prosecutor misled the jury about its sentencing role; that the trial court erred by instructing the jury that "no one has the right to violate the rules that we all share"; that the trial court erred in admitting "gruesome" photographs; that the trial court erred in giving the expert witness instruction; that the trial court refused to find nonstatutory mitigation; that the standard jury instructions diminish the jury's sense of responsibility in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); that the jury instructions on aggravating factors were constitutionally inadequate; that the prosecutor improperly argued the victim impact evidence; that the prosecutor impermissibly commented on the credibility of a state witness; that the trial court erred in instructing that a majority could render a sentence recommendation; that the trial court allowed the State to argue lack of remorse; that the defendant's execution is unconstitutional because he was a juvenile; that the one-year time limit in Florida Rule of Criminal Procedure 3.851 is unconstitutional; that Rule Regulating the Florida Bar 4-3.5(d)(4), which precludes juror interviews, is unconstitutional; that Florida's capital sentencing scheme is unconstitutional on its face and as applied; that penalty phase jury instructions unconstitutionally shifted the burden of proof to Hartley; that Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); that trial counsel provided ineffective assistance by failing to call certain penalty phase witnesses, failing to call alibi witnesses, failing adequately to question jurors and remove biased jurors, failing to present mitigation, failing to use a mental health expert and to establish available mitigation, and failing to present mitigation evidence that Harvey saved another inmate's life; and that postconviction counsel was ineffective for failing to obtain public records.
[4] In addition, in Hartley's brief, appellate counsel expressly waived appeal of the post-conviction court's ruling on the motion's newly discovered evidence claim.
[5] We note that appellate counsel's factual allegations suggesting both misconduct by postconviction counsel and a violation of Hartley's rights fail to refer to the record, which largely refutes the claims. For example, the assertion that Hartley was excluded from the in-camera hearing on Morrow's motion to withdraw is expressly rebutted by the transcript, which is part of the record.