29 So.3d 959 (2010)
Ronnie FERRELL, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
Ronnie Ferrell, Petitioner,
v.
Walter A. McNeil, etc., Respondent.
Nos. SC07-92, SC07-1447.
Supreme Court of Florida.
January 14, 2010.
Rehearing Denied March 1, 2010.
*964 Frank J. Tassone, Jr. and Rick A. Sichta of Tassone and Sichta, LLC, Jacksonville, FL, for Appellant/Cross-Appellee/Petitioner.
Bill McCollum, Attorney General, and Meredith Charbula, Assistant Attorney General, Tallahassee, FL, for Appellee/Cross-Appellant/Respondent.
PER CURIAM.
In postconviction proceedings, Ronnie Ferrell filed a motion under Florida Rule of Criminal Procedure 3.850 to vacate his convictions for first-degree murder, armed robbery, and armed kidnapping, and his sentence of death. The trial court denied Ferrell's guilt-phase claims, but granted him a new penalty phase. Ferrell appeals the denial of guilt-phase relief and petitions *965 this Court for a writ of habeas corpus. The State cross-appeals the trial court's order granting Ferrell a new penalty phase. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons set forth below, we affirm in all respects the trial court's order denying Ferrell a new guilt phase and granting him a new penalty phase, and we further deny his habeas petition.

FACTS AND PROCEDURAL HISTORY
Ferrell, who was twenty-seven years old at the time of the murder, was convicted of first-degree murder, armed robbery, and armed kidnapping, and sentenced to death for the killing of seventeen-year-old Gino Mayhew in the Washington Heights area of Jacksonville, Florida. His codefendants, Kenneth Hartley and Sylvester Johnson, were each tried separately. Ferrell v. State, 686 So.2d 1324, 1326 (Fla. 1996).[1] The following evidence was presented at Ferrell's trial:
On April 20, 1991, the victim ran into the apartment of Lynwood Smith acting very excited and upset. The victim told Smith that he had just been beaten up and robbed by two men, one of whom looked like Kenneth Hartley and one of whom had his face covered. Later that evening, a witness saw Ferrell and Johnson at a pool room and the witness overheard Ferrell state that he had beat and robbed the victim.
Sidney Jones worked for the victim in the victim's crack cocaine business. He testified to the following information. On April 22, the victim was selling crack from his Chevrolet Blazer at an apartment complex. On that date, Jones saw the three codefendants together near the Blazer. He saw Hartley holding a gun to the victim's head and saw him force the victim into the driver's seat. Hartley climbed into the back seat behind the victim. Ferrell climbed into the front passenger seat. Johnson was outside the Blazer talking to Hartley. After Hartley, Ferrell, and the victim entered the Blazer, Jones saw it leave the apartment complex at a high speed and heard Ferrell shout out of the Blazer that the victim would "be back." Johnson followed soon thereafter in a truck.
Another witness confirmed that the victim, Ferrell, and another individual left the apartment complex together in the victim's Blazer at a high rate of speed.
On April 23, police found the victim's Blazer parked in a field behind an elementary school. The victim's body was found slumped over in the driver's side seat of the Blazer. He had been killed by bullet wounds to the head (he had been shot five times: one shot was fired into his forehead, three shots were fired into the back of his head, and one shot was fired into his shoulder).
Several weeks after the victim was found, Jones told police what he had seen on April 22, and Ferrell, Hartley, and Johnson were arrested for the victim's murder. Ferrell provided police with several conflicting stories as to his whereabouts on the night of the murder, which were rebutted at trial.
While in jail, Ferrell talked to a cellmate about the crime. The cellmate *966 testified as follows. Ferrell told him that Hartley and Johnson had previously robbed the victim and that Ferrell was involved in that robbery; that Johnson and Hartley had been recognized by the victim; and that Ferrell, Hartley, and Johnson conspired to murder the victim to prevent him from retaliating for the robbery. Ferrell told the cellmate that the three of them agreed on a plan to purchase a large amount of crack from the victim to get the victim off by himself. Ferrell was the one who approached the victim about the sale because the victim knew him and had not recognized him in the previous robbery. Ferrell further stated that Hartley entered the Blazer with his gun and told the victim "you know what this is." They took the victim to the isolated field where they robbed him of drugs and money and then Hartley shot the victim in the head four or five times. Johnson met them at the field in the truck and drove them away from the scene. The cellmate's testimony included details about the crime that had not been released to the public.
Ferrell presented no evidence or witnesses in his defense and was convicted as charged. At the penalty phase proceeding, the State introduced Ferrell's convictions for a 1984 armed robbery and a 1988 riot. A correctional officer testified regarding Ferrell's actions during the 1988 riot. Again, the defense presented no evidence. The jury recommended, by a seven-to-five vote, that the death penalty be imposed.
The trial judge postponed sentencing until Hartley and Johnson were tried and sentenced. Hartley received the death penalty; Johnson received a sentence of life imprisonment. The trial judge sentenced Ferrell to death after finding and giving great weight to five aggravating circumstances (prior violent felonies; committed during the course of a kidnapping; committed for financial gain; heinous, atrocious, or cruel (HAC), and cold, calculated, and premeditated (CCP)). He also found but gave slight weight to the mitigating circumstance that Ferrell was not the actual shooter. Although not considered in aggravation, the trial judge noted that Ferrell was just as culpable as the shooter because he used his friendship with the victim to lure the victim to his death.
The trial judge sentenced Ferrell to consecutive sentences for the other two convictions: thirty years as a habitual felony offender for the robbery conviction and life imprisonment as a habitual felony offender for the kidnapping conviction.
Id. at 1326-27. The Court affirmed Ferrell's convictions and death sentence.[2] As to the sentences for the armed robbery *967 and armed kidnapping convictions, the Court remanded to the trial court with instructions that the habitual offender sentences be ordered to run concurrently rather than consecutively. Id. at 1331.
Ferrell's postconviction proceedings spanned several years. In April 1997, Ferrell filed an initial motion for postconviction relief pursuant to rule 3.850. He filed an amended motion in August 2004.[3] After a Huff[4] hearing, the circuit court ordered that an evidentiary hearing take place only on claim 1 (ineffective assistance of counsel) (excluding subclaims 9 and 10), claim 2 (Giglio), claim 3 (Brady), and claim 4 (newly discovered evidence). He did not receive an evidentiary hearing on claims 5 through 11.
Both Ferrell and the State presented evidence at the evidentiary hearing. In support of his guilt-phase claims, Ferrell presented the testimony of Eartha Griffin, who testified that her son knew Ferrell and the victim.[5] He also presented the testimony of Rene Jones, his sister's boyfriend at the time of the murder. Jones testified that he saw Ferrell the day before he saw the news story on the murder and Ferrell's appearance and behavior were normal and he had no blood on him. Officer Robert Nelson of the Jacksonville Sheriff's Office (JSO) testified that he knew critical State witness Sidney Jones and that Jones was a confidential informant for JSO. Ferrell also presented evidence of the extensive media coverage of the murder in this case and evidence that inmates in the Duval County Jail at the time of the murder had access to newspapers and television.
Ferrell's trial counsel was deceased and neither side offered his files or records into evidence. Ferrell presented two attorneys who testified as to the standard of performance for attorneys defending clients in death penalty cases. As to his penalty phase claims, which are more fully discussed herein, he presented the testimony *968 of various friends and family members who testified to the details of his difficult childhood and extensive history of abuse. Significantly, all of the witnesses testified to their repeated attempts to contact defense counsel to no avail. Ferrell also presented testimony from mental health experts, and the State presented its own mental health expert.
Following the evidentiary hearing, the circuit court entered a sixty-six-page order denying all claims regarding the guilt phase portion of Ferrell's trial and granting all claims regarding the penalty phase, thus granting Ferrell a new penalty phase trial.
Ferrell has appealed the denial of his guilt phase claims.[6] He also raises two habeas claims.[7] The State has cross-appealed the order granting a new penalty phase.

ANALYSIS

Ferrell's Rule 3.850 Claims

I. Ineffective Assistance of Counsel During the Guilt Phase
Ferrell raises numerous individual claims of error under this issue alleging ineffective assistance of counsel during the guilt phase.[8] Ferrell claims that the circuit court erred in denying some of these claims after an evidentiary hearing and in summarily denying others without an evidentiary hearing.

A. Trial Counsel's Failure to Participate in Discovery
The trial court held an evidentiary hearing on Ferrell's subclaim that trial counsel *969 was ineffective for failing to (1) attend the majority of the depositions taken by the State; (2) conduct any depositions of his own; (3) read the State's provided discovery; and (4) investigate and call witnesses.
Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted). Clearly, a claim that defense counsel did not participate meaningfully in the discovery process raises concerns about counsel's performance. That is why this Court has held that the absence of counsel at discovery depositions in a criminal case when the State is seeking the death penalty is "presumptively deficient." Stephens v. State, 975 So.2d 405, 418 (Fla.2007). However, as with all claims under Strickland, the defendant must still prove that he or she was prejudiced by such absence.

Depositions and Discovery
Ferrell first argues that counsel was ineffective for failing to take the depositions of Robert Williams and Juan Brown, witnesses who testified at Ferrell's trial. Williams, an inmate who was placed in a cell next to Ferrell at the Duval County Jail, testified at trial that Ferrell told him he robbed Mayhew with codefendants Johnson and Hartley on the Saturday before Mayhew's murder and that he committed Mayhew's murder with Johnson and Hartley. Brown, Ferrell's acquaintance since childhood, testified at trial that on the night of Mayhew's murder, he saw Mayhew driving his vehicle with Ferrell in the front passenger seat.
The trial court concluded that Ferrell's claim concerning trial counsel's failure to depose Williams and Brown was conclusory and insufficiently pled. The trial court did not err in reaching this conclusion. "This Court has held that when a failure to depose is alleged as part of an ineffective assistance of counsel claim, the appellant must specifically set forth the harm from the alleged omission, identifying `a specific evidentiary matter to which the failure to depose witnesses would relate.'" Davis v. State, 928 So.2d 1089, 1117 (Fla.2005) (quoting Brown v. State, 846 So.2d 1114, 1124 (Fla.2003)). Ferrell merely claims that deposing Williams and Brown would have revealed a number of reliability and impeachment issues. He does not specifically state what these issues would be. Further, he does not establish that deposing Williams or Brown would have resulted in the discovery of information that was unknown to trial counsel before trial. See Davis, 928 So.2d at 1117. The record contains sworn statements, police reports, and criminal records on both Williams and Brown, which were available to trial counsel before trial. Moreover, there is nothing in the record demonstrating what evidence would have been elicited from these witnesses or what material might have been discovered had trial counsel deposed the witnesses, *970 and Ferrell did not present any such evidence or testimony at the evidentiary hearing. Thus, Ferrell has failed to show prejudice resulting from trial counsel's decision not to depose these individuals such that the Court's confidence in the outcome of the trial is undermined, and thus this claim is without merit.
Ferrell next contends that the trial court erred in denying his claim that trial counsel was ineffective for failing to attend the depositions of Sidney Jones and Gene Felton. Once again, failure to attend depositions of witnesses without explanation is presumed to be deficient, but prejudice must also be established. In this regard, Ferrell has not established any specific information that trial counsel would have learned from attending the depositions of these witnesses that could have been used to impeach them at trial. Thus, Ferrell has failed to demonstrate prejudice.

Reading Discovery
Ferrell's next claim is that trial counsel was ineffective in failing to read the discovery provided by the State. Clearly, counsel has an obligation to review discovery provided by the State, but Ferrell is unable to establish that defense counsel did not review discovery. Further, Ferrell offers no explanation for how trial counsel impeached witnesses Jones, Williams, and Lynwood Smith if he did not read their sworn statements and depositions. Accordingly, relief as to this subclaim must be denied.

Investigating and Calling Witnesses
The final argument raised by Ferrell under this subclaim is that the trial court erred in denying his claim that trial counsel was ineffective for failing to call various witnesses to testify in the guilt phase. We affirm the trial court's denial of this claim because the record establishes that Ferrell consented to trial counsel's strategy to not present these witnesses. See Gamble v. State, 877 So.2d 706, 714 (Fla.2004) ("[I]f the defendant consents to counsel's strategy, there is no merit to a claim of ineffective assistance of counsel."). The only guilt-phase witnesses that Ferrell called at the evidentiary hearing, Eartha Griffin and Rene Jones, did not cast doubt on any of the key guilt-phase testimony. Ferrell failed to establish that the strategy of not presenting witnesses on his behalf in the guilt phase was unreasonable and failed to establish how the omission of any specific witness's testimony prejudiced the outcome of his trial. See Morris v. State, 931 So.2d 821, 830 (Fla.2006) ("[T]he failure to call witnesses can constitute ineffective assistance of counsel if the witnesses may have been able to cast doubt on the defendant's guilt, and the defendant states in his motion the witnesses' names and the substance of their testimony, and explains how the omission prejudiced the outcome of the trial." (quoting Ford v. State, 825 So.2d 358, 360-61 (Fla.2002))). Accordingly, we reject Ferrell's claim that trial counsel was ineffective for failing to participate in discovery.

B. Trial Counsel's Failure to Attend Hearings
Ferrell argues next that the trial court erred in denying, after an evidentiary hearing, his claim that trial counsel rendered ineffective assistance by repeatedly missing scheduled court dates and that the cumulative effect of the missed court dates constitutes per se ineffectiveness under Cronic. Under Cronic, "if the defendant can demonstrate that counsel `entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing,' the law will presume prejudice and deem counsel ineffective per se." Dillbeck v. State, 882 *971 So.2d 969, 974 (Fla.2004) (quoting Cronic, 466 U.S. at 659, 104 S.Ct. 2039). Although Ferrell identified in his postconviction motion several pretrial court dates that trial counsel failed to attend, he focuses on appeal on two court datesNovember 12, 1991, and February 13, 1992. He claims on appeal that the trial court erred in denying this claim under both Strickland and Cronic.
As to the November 12, 1991, date, Ferrell argued that the trial was scheduled to begin on that date with jury selection and his counsel failed to appear without explanation or warning, thus rendering ineffective assistance. The trial court presumed deficient performance stating, "[w]ithout explanation from counsel [due to the fact that he was deceased at the time of the evidentiary hearing] as to the circumstances surrounding this absence, this Court finds it was error for counsel to miss this date." However, the court concluded that Ferrell failed to meet the requirements of a Strickland claim because he did not make any claim of prejudice as to this missed hearing. We agree with the trial court's denial of this claim because Ferrell was required to both allege and prove prejudice.
Ferrell also argued that trial counsel was ineffective for failing to attend a hearing on February 13, 1992, at which time the State was able to a serve a habitual felony offender (HFO) notice on Ferrell without objection. We agree with the trial court's conclusion that Ferrell failed to establish prejudice resulting from trial counsel's absence at this hearing. The record shows that although Ferrell was absent at this hearing, the trial judge informed Ferrell that his trial counsel would be in chambers that afternoon to set a new trial date and that counsel would explain the HFO notice to Ferrell. Not only did Ferrell fail to contend that trial counsel missed the second hearing in chambers later in the day, but he also did not establish that trial counsel was precluded from filing objections to the HFO notice. Further, he did not allege or demonstrate that had trial counsel filed an objection to the HFO notice, it would have been stricken and he would not have been sentenced as an HFO. Thus, this claim is without merit.
Regarding the remaining pretrial court dates listed by Ferrell in his motion, which are not addressed with specificity in Ferrell's initial brief, the trial court correctly concluded that Ferrell failed to establish deficiency under Strickland. The record shows that on these dates, trial counsel either called ahead to inform the court why he was unable to attend, the trial judge questioned whether trial counsel was informed of the court date, or nonsubstantive matters were addressed and the case was simply passed to the next court date. Further, because we agree with the trial court's conclusion that counsel did not render deficient performance in failing to attend a majority of the hearings in question, we reject Ferrell's claim of per se ineffectiveness under Cronic. Moreover, the record shows that trial counsel filed numerous pretrial motions in this caseactions which rebut Ferrell's claim that trial counsel entirely failed to subject the State's case to a meaningful adversarial testing.
Accordingly, we deny relief on this claim.

C. Trial Counsel's Failure to Impeach State Witnesses
In this claim, Ferrell contends that the trial court erred in denying his claim that trial counsel was ineffective for failing to impeach the credibility of State witnesses Robert Williams, Sidney Jones, and Juan Brown. Ferrell was granted an evidentiary *972 hearing on this claim. Each witness is discussed in turn.

Robert Williams
Ferrell makes two claims as to Williams. The first claim is that Williams was a convicted felon and jailhouse informant and that trial counsel failed to effectively impeach him with these facts. The trial court properly denied this claim on the grounds that Ferrell failed to establish the first Strickland prong of deficient performance. As the trial court concluded, the record shows that the jury knew Williams was a convicted felon and a jailhouse informant. On direct examination of Williams, the State brought out that Williams had four felony convictions and two shoplifting convictions, was in jail at the time of trial waiting to be sentenced for dealing in stolen property, and had a deal with the State in return for his testimony. Further, on cross-examination of Williams, trial counsel asked him about his prior convictions and trial counsel addressed the prior convictions in closing arguments. Thus, Ferrell did not establish that trial counsel's performance was deficient.
The second claim as to Williams is that trial counsel failed to impeach him with the fact that all of the information he testified to was publicly released in the media well before the statement he provided to the police. The trial court properly denied this claim as conclusory and insufficiently pled. Although Ferrell demonstrated that there was substantial media coverage of the murder, he did not establish that Williams gleaned any of the details about which he testified from these reports. Ferrell failed to call Williams to testify at the evidentiary hearing or present any evidence that Williams accessed any of the media reports related to the murder. Additionally, Ferrell's trial counsel argued to the jury in closing arguments that Williams and other State witnesses could have learned details of the murder from the media coverage immediately after Mayhew's body was discovered.
Thus, this claim is without merit.

Sidney Jones
In his postconviction motion, Ferrell alleged that trial counsel should have made it known to the jury that Sidney Jones "had been convicted of perjury during two different murder trials and had a long history of criminal activity that extended far beyond the `five felonies' and a trespassing charge he stated at trial." The trial court correctly determined that Ferrell failed to satisfy the deficiency prong of Strickland as to this claim. First, as Ferrell acknowledges, Jones testified at trial that he had been convicted of five felonies and two shoplifting charges. Second, although Ferrell claimed that there were two prior convictions for perjury, he only presented evidence of one at the evidentiary hearingan August 1979 judgment of conviction and sentence for perjury. However, the State demonstrated that this conviction was overturned by this Court ten years before Ferrell's trial. See Jones v. State, 400 So.2d 12 (Fla.1981). Therefore, the conviction could not have been used to impeach Jones. Because Ferrell presented no other evidence to substantiate his allegations, this claim must fail.

Juan Brown
Juan Brown is the third witness Ferrell claims trial counsel failed to effectively impeach. Ferrell made two claims as to Brown. First, he argued that Brown was a convicted felon and trial counsel should have impeached him with this information. Second, he contended that Brown's testimony regarding observing Ferrell riding in Mayhew's vehicle on the night of the murder was so unbelievable *973 that any reasonable investigation or cross-examination would have created considerable doubt as to whether Brown's testimony was credible. The trial court also properly denied this claim on the basis that Ferrell failed to establish the deficiency prong of Strickland. First, as noted by the trial court, the jury was aware that Brown had been convicted of two felonies. Second, Ferrell relies on testimony he presented at the evidentiary hearing through Dr. Richard Boehme to establish that trial counsel failed to impeach Brown on his ability to actually observe the events about which he testified. However, as explained by the trial court:
[Dr. Boehme] testified that, in his opinion, because of vehicle speed and darkness, Mr. Brown could not have identified the Defendant in the passenger seat of the victim's Blazer. The State filed a motion in limine to exclude this testimony. In considering the State's motion, this Court queried collateral counsel whether the Defendant's claim went to ineffective impeachment or the failure to call Dr. Boehme or a like expert. Collateral counsel informed this Court that the Defendant was not claiming counsel was ineffective for failing to call Dr. Boehme or a like expert as the testimony would not have been admissible at trial. Accordingly, this Court declines to consider Dr. Boehme's testimony.[[9]]
Rather, collateral counsel informed this Court that Dr. Boehme's testimony would be presented to establish that trial counsel was ineffective for failure to investigate potential impeachment evidence concerning Juan Brown. However, collateral counsel failed to call Mr. Brown and demonstrate how any additional information learned from Dr. Boehme could have been effectively used to impeach his testimony.
Finally, the record reveals that trial counsel thoroughly cross-examined Brown on the following: (1) whether he had consumed alcohol or drugs that night; (2) the time of night he allegedly saw Ferrell; (3) the speed of the cars; (4) the direction each car was traveling; and (5) the location of Ferrell in relation to where Brown was sitting in his car. Then, in closing arguments, trial counsel attacked Brown's ability to observe the events about which he testified, noting that Brown's testimony was "outlandish" and "unimaginable."
Because Ferrell cannot demonstrate that trial counsel was deficient in his cross-examination of Brown or with his handling of Brown's testimony during closing arguments or that he was deficient in failing to call an expert on eyewitness examination, this claim is without merit.[10]

D. Ineffective Assistance During Voir Dire
Ferrell raised four subclaims as to trial counsel's ineffective assistance during voir dire. Each subclaim is discussed separately below. Ferrell was granted an evidentiary hearing on these subclaims.

Short Voir Dire
Ferrell's first subclaim was that trial counsel's voir dire was inadequate because it comprised only eight pages of the transcript, versus the State's 141-page voir dire. As the trial court properly concluded, Ferrell failed to establish deficient *974 performance because he does not identify additional questions that counsel failed to ask but should have. Ferrell also failed to establish prejudice because he did not identify any juror who, with more extensive questioning, would have been found to be either unqualified or biased against Ferrell or Ferrell's theory of defense. See Davis v. State, 928 So.2d 1089, 1118 (Fla. 2005) (rejecting Davis's claim of ineffective assistance based on trial counsel's alleged failure to question the jurors about their views concerning drugs, alcohol abuse, and mental illness because Davis failed to demonstrate that any unqualified juror served in the case or that any juror was biased or had an animus toward Davis's theory of the case); cf. Carratelli v. State, 961 So.2d 312, 324 (Fla.2007) ("[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased."). Moreover, trial counsel specifically noted at the beginning of his voir dire that his questions would be brief because most of his questions had already been asked by the State and the trial court. Thus, this claim is without merit.

Allowing Excusal of Twelve Potential Jurors
Ferrell's next subclaim regarding voir dire was that trial counsel was ineffective for allowing the State to remove for cause twelve venirepersons without individually questioning them and without attempting to rehabilitate them. Again, Ferrell did not demonstrate the deficiency or prejudice prongs of Strickland. As to deficiency, Ferrell failed to allege or establish what questions trial counsel should have asked or of whom he should have asked them. Thus, as the trial court noted, this claim is "highly speculative." Ferrell also neglected to allege or demonstrate prejudice. As the trial court explained:
The Defendant does not identify any particular juror who served on his case that was either biased against him or in favor of the State, any juror who indicated that he/she could not render a verdict solely on the evidence presented and the instructions provided by the trial court, or any juror whose views on capital punishment prevented or substantially impaired the performance of his/her duties as a juror in accord with the oath they took and trial judge's instructions.
In Davis, this Court rejected similar allegations. There, the defendant alleged trial counsel was ineffective during voir dire because trial counsel did not have a reasonable basis to stipulate to the removal for cause of eleven potential jurors. Davis asserted that if counsel had "followed up" during voir dire with more specific questions and had effectively rehabilitated the jurors, there would not have been a basis for any for-cause challenges. Davis, 928 So.2d at 1118. This Court found these allegations to be "mere conjecture," just as the trial court in this case did. Id. Accordingly, this claim must fail.

The Bible References
In his next subclaim, Ferrell contends that trial counsel was ineffective for failing to object to the trial court's instruction to the prospective jurors about the position Hebrew and Christian scholars have taken on capital punishment specifically, that "thou shall not kill" has been interpreted to mean "thou shall not murder." The trial court correctly determined that this claim was procedurally barred because it was raised and resolved on direct appeal, and Ferrell was attempting to raise it again as an ineffective assistance claim. On direct appeal, Ferrell raised a version of this claim and this Court discouraged trial judges from injecting biblical philosophy into any criminal *975 trial, but ruled that the "judge's brief discussion was harmless when viewed in light of the entire record." Ferrell, 686 So.2d at 1328. Further, this Court's finding that the comments were harmless is fatal to any claim of prejudice. See Cox v. State, 966 So.2d 337, 347-48 (Fla.2007) (noting that this Court's finding that the prosecutor's misstatements constituted harmless error was fatal to Cox's claim that counsel was ineffective for failing to object to them). Therefore, this claim must fail.

Rushing Voir Dire
Ferrell's final subclaim is that counsel was ineffective for failing to object to the trial court "rushing" voir dire. The trial court properly denied this claim because Ferrell failed to demonstrate deficient performance or allege prejudice. Ferrell did not present any evidence that the trial court rushed voir dire, and therefore counsel cannot be found to have rendered deficient performance for failing to object. See Mungin v. State, 932 So.2d 986, 997 (Fla.2006) (recognizing that counsel is not ineffective for failing to raise a meritless objection). In fact, as the collateral court noted, the record reflects that the voir dire in this case was quite lengthy.
Accordingly, this claim lacks merit.

E. Failure to Present Defense as Promised
Ferrell argued in his postconviction motion that counsel rendered ineffective assistance when he informed the jury during opening statements that he would present an alibi defense and then failed to present alibi testimony at trial. Ferrell was granted an evidentiary hearing on this claim. The trial court correctly determined that Ferrell failed to establish the deficiency and prejudice prongs of Strickland as to this claim. As the trial court found, counsel cannot be deemed deficient for failing to present a defense where there is no evidence to support that defense. See Bell v. State, 965 So.2d 48, 64 (Fla.2007) (holding counsel was not ineffective for failing to present a credible defense when there was no evidence to support a credible defense). The two witnesses that Ferrell claims were alibi witnesses, Ferrell's sister, Towanna Ferrell, and her boyfriend, Rene Jones, testified at the evidentiary hearing, but did not provide any testimony concerning Ferrell's whereabouts on the night of the murder. Rather, both witnesses testified at the evidentiary hearing as to Ferrell's whereabouts on Sunday night, April 21, 1991, the night before the murder. Further, as to prejudice, although the State concedes that the mention of an alibi witness by trial counsel during opening statement was a "situation best avoided," trial counsel explained to the jury during closing statement that the witnesses he alluded to during opening statements became irrelevant when the State was unable to pinpoint the time of death. He explained that because the State did not pinpoint the time of death, it was his decision to not call the witnesses in order to preserve first and last closing arguments. Thus, Ferrell failed to establish both deficiency and prejudice such that this Court's confidence in the outcome of the trial would be undermined, and this claim must fail.

F. Failure to Ensure Ferrell's Presence at Pretrial Hearing
Ferrell's next argument is that the trial court erred in denying, after an evidentiary hearing, his claim that trial counsel rendered ineffective assistance when he waived Ferrell's presence at all pretrial proceedings at a hearing on June 26, 1991. Ferrell claimed in his motion below, and claims on appeal, that he did *976 not knowingly, intelligently, and voluntarily waive his appearance at all pretrial hearings. The trial court correctly determined that this claim was both insufficiently pled and unsupported by any evidence in the record or introduced at the evidentiary hearing. Although a defendant has a constitutional right to be present at all critical stages of his trial, see Muhammad v. State, 782 So.2d 343, 351 (Fla.2001), Ferrell cites no authority for the proposition that a defendant has the right to be present at every conference or hearing in the case. Ferrell fails to identify any critical stage of his trial from which he was involuntarily absent. Additionally, the record reveals that trial counsel did not waive Ferrell's presence at all pretrial proceedings. Moreover, Ferrell did not allege, or introduce any evidence at the evidentiary hearing to show, that he was absent from a pretrial hearing where evidence was adduced or where his consultation was required.
Therefore, this claim is without merit.

G. Failure to Argue Insufficiency of the Evidence
Ferrell claims that the trial court erred in summarily denying without an evidentiary hearing his claim that trial counsel was ineffective for failing to argue the insufficiency of the evidence in either a motion for judgment of acquittal or a motion for new trial. Generally, a defendant in a rule 3.850 motion filed in a capital case is entitled to an evidentiary hearing unless "(1) the motion, files, and records in the case conclusively show that the [defendant] is entitled to no relief, or (2) the motion or a particular claim is legally insufficient." Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000); see also Fla. R.Crim. P. 3.850(d).[11] The trial court's summary denial of this claim was proper. As this Court found on direct appeal, there was sufficient evidence to support Ferrell's convictions for armed robbery and first-degree murder. See Ferrell, 686 So.2d at 1329. Trial counsel cannot be deemed ineffective for failing to raise a meritless argument. Mungin, 932 So.2d at 997. Thus, this claim must fail.

H. Cumulative Effect of Counsel's Errors
Ferrell contends that the trial court erred in denying his claim that the cumulative effect of counsel's errors deprived him of a fair trial. The trial court properly denied this claim because, as explained previously, Ferrell's alleged individual errors are without merit. See Griffin v. State, 866 So.2d 1, 22 (Fla.2003) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit, and [the defendant] is not entitled to relief on this claim.").
In light of the foregoing, we conclude that the trial court did not err in denying Ferrell's claims of ineffective assistance of counsel in the guilt phase.

II. Giglio Claims
Ferrell alleges that the trial court erred in denying his claim of three separate Giglio violations after an evidentiary hearing, which is discussed in turn below. To establish a Giglio violation, it must be shown that (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material. Guzman v. State, 868 So.2d *977 498, 505 (Fla.2003). "[T]he false evidence is material `if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Id. at 506 (quoting United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). "The State, as the beneficiary of the Giglio violation, bears the burden to prove that the presentation of false testimony at trial was harmless beyond a reasonable doubt." Id. Giglio claims present mixed questions of law and fact. Accordingly, this Court defers to those factual findings supported by competent, substantial evidence, but reviews de novo the application of the law to the facts. Green v. State, 975 So.2d 1090, 1106 (Fla.2008).

First Alleged Giglio Violation: Robert Williams' Testimony
Ferrell claimed in his postconviction motion that Williams' testimony concerning Ferrell's confession to him while they were in jail together was false because he could have learned all of the details about which he testified from the media rather than from Ferrell. The trial court denied this claim after an evidentiary hearing on the grounds that Ferrell failed to meet the first and second prongs of Giglio.
As to the first Giglio prong, the trial court correctly determined that Ferrell failed to establish that Williams' testimony was false. At the evidentiary hearing, Ferrell introduced evidence of the media coverage at the time of the murder, but did not introduce any evidence to demonstrate that Williams personally had access to any media reports about the murder, read any of the media reports, or gleaned all, or even some, of the details about which he testified from the media. Ferrell also failed to establish that all of the details about which Williams testified were ever reported by the media.
The trial court also properly concluded that Ferrell failed to establish the second Giglio prongthat the State knew the testimony was false. Ferrell failed to present any evidence at the evidentiary hearing and fails to point to any evidence in the record to establish that the State knew, or even suspected, that Williams' testimony was false.
Accordingly, this claim must fail.

Second Alleged Giglio Violation: State Closing Argument Re: Williams
In his next Giglio subclaim, Ferrell alleges that the trial court erred in denying his claim that the State violated Giglio when, during closing argument, the prosecutor misled the jury by telling the jury that Williams would be in jail for ten years and thus had no reason to testify falsely. Specifically, in his postconviction motion, Ferrell pointed to the prosecutor's statement during his guilt phase closing argument: "He [Williams] told you the maximum penalty was 15 years in prison and in return for his truthful testimony in this case he told you that it's agreed that he won't get more than ten years, ten years in Florida State Prison for trying to sell a stolen camera." Ferrell also pointed to two other times the prosecutor made similar statements. Ferrell claimed these statements were misleading regarding Williams' impending sentence as Williams only faced up to ten years in return for his testimony, not "ten years ... to be truthful." Ferrell also noted that Williams ultimately received a one year and six months' sentence in return for his testimony.
The trial court did not err in denying this Giglio claim. First, as the trial court concluded, this claim actually presents a substantive claim of improper closing argument, which should have been raised on direct appeal, and is thus procedurally barred. Second, the trial court *978 correctly concluded that no Giglio violation occurred as a result of the prosecutor's arguments concerning Williams' plea agreement. To prove a Giglio violation, Ferrell would have to show either that Williams' plea agreement did not actually call for a sentence of up to ten years or that the prosecutor misled the jury by stating that Williams would actually be sentenced to ten years in prison if he testified truthfully against Ferrell. Ferrell made neither of these showings. The prosecutor argued, consistent with Williams' testimony, that Williams "would get no more than ten years in prison if he would be truthful, to say what he knew about the murder." The prosecutor later noted that Williams testified that he "won't get more than ten years in State Prison." Therefore, contrary to Ferrell's claim, the record clearly refutes any notion that the prosecutor told the jury that Williams would actually be sentenced to ten years in prison. Rather, the record shows that the prosecutor accurately recounted Williams' testimony that he would be sentenced to no more than ten years.
Accordingly, this claim lacks merit.

Third Alleged Giglio Violation: Testimony of Williams and Felton
In his final Giglio subclaim, Ferrell contends the trial court improperly denied his claim that the prosecutor knowingly presented the false testimony of Robert Williams and Gene Felton regarding the robbery of Mayhew on the Saturday night before his murder. Ferrell claims that Felton and Williams lied when they testified that Ferrell was involved in that robbery. Ferrell alleges further that the State knew that Deatry Sharp, not Ferrell, was the third robber because Sharp testified in two depositions that Hartley and Johnson robbed Mayhew while Sharp acted as a lookout.
The trial court did not err in denying this claim. Ferrell cannot establish a Giglio violation by showing merely that the State put on witnesses whose testimony conflicted with another person's version of events. Moreover, Ferrell failed to present any evidence at the evidentiary hearing to show that Sharp's testimony was truthful and the testimony of Williams, Felton, and Smith was false. Because Ferrell has not established that the testimony of Williams and Felton was false or that the prosecutor knowingly presented false evidence by putting Williams and Felton on the stand, he failed to satisfy the first two Giglio prongs. Accordingly, this claim must fail.

III. Brady Claims
Ferrell next contends that the trial court erred in denying his claim of three separate Brady violations, to be discussed in turn below. The trial court granted Ferrell an evidentiary hearing on this claim. In Duest v. State, 12 So.3d 734 (Fla.2009), this Court explained:
To establish a Brady violation, the defendant has the burden to show (1) that favorable evidenceeither exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); see also Way v. State, 760 So.2d 903, 910 (Fla.2000). To meet the materiality prong, the defendant must demonstrate a reasonable probability that had the suppressed evidence been disclosed the jury would have reached a different verdict. Strickler, 527 U.S. at 289, 119 S.Ct. 1936. As with prejudice under Strickland, materiality under Brady requires a probability sufficient to undermine confidence in the outcome. See Way, 760 So.2d at 913; see also Strickler, *979 527 U.S. at 290, 119 S.Ct. 1936; United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (expressly applying the Strickland standard of "reasonable probability" to Brady cases).
Duest, 12 So.3d at 744.

First Alleged Brady Violation: Joyce Worth and Natasha Brown
In Ferrell's first Brady claim, he alleges that the trial court erred in denying his claim that the State withheld notes from police interviews with Joyce Worth and Natasha Brown, both of whom he claims had information that someone else committed Mayhew's murder. The trial court denied this claim because Ferrell failed to prove that any law enforcement officer or agent of the State made or possessed notes of an interview with Worth or Brown.
The trial court did not err in denying this claim. Ferrell failed to satisfy the first prong of Brady because he never put on any evidence at the evidentiary hearing that these purported interview notes even existed. Further, as the State argues, and the trial court found, Ferrell put on no evidence that these alleged notes contained any Brady material. Ferrell contends in his initial brief that the notes are important because Worth and Brown "had learned that a person other than the Defendant committed the murder of Gino" and that with these notes, defense counsel could have established a "concrete alibi." However, Ferrell introduced no evidence in support of his assertion that someone other than Ferrell committed the murder of Mayhew. Finally, although Ferrell claims that defense counsel could have demonstrated a "concrete alibi" using this exculpatory evidence, Ferrell produced no such alibi at the evidentiary hearing. The only purported alibi evidence he produced at the evidentiary hearing was the testimony of Rene Jones and Towanna Ferrell who, as explained previously, provided an "alibi" for Ferrell for the wrong night.
Accordingly, this claim is without merit.

Second Alleged Brady Violation: Bobby Brown
Ferrell claims here that the trial court erred in denying his claim that the State withheld police notes of an interview of Bobby Brown. According to Ferrell, Bobby Brown told the police that Ferrell gave his boss, Clyde Porter, a ride to a liquor store at 11:00 p.m. on the night of the murder. Ferrell claims this testimony would have established that it was impossible for Ferrell to have been in Washington Heights at 11:00 p.m. to participate in the abduction and murder of Mayhew. The trial court concluded that no Brady violation occurred because the evidence introduced at the evidentiary hearing "clearly established that the State did not withhold this information."
The trial court properly denied this claim because this allegedly withheld evidence was actually revealed to trial counsel at Detective William Bolena's pretrial deposition. Further, Porter was listed on the State's witness list and his statement to police was included in the homicide report. Therefore, Ferrell cannot prove that it was willfully or inadvertently suppressed by the Statethe second prong of Brady.

Third Alleged Brady Violation: Sidney Jones
Ferrell's final Brady claim is that the trial court improperly concluded that the State did not withhold information that Sidney Jones had been in the past, and was at the time of the murder, a paid police informant. See Hendrix v. State, 908 So.2d 412 (Fla.2005) (recognizing that information that a State witness is, or has been, a confidential informant (CI) for the *980 investigating police agency is information that should be disclosed to the defense). The trial court properly denied this claim because evidence presented at the evidentiary hearing showed that trial counsel was aware of Jones's status as a CI. The deposition of Detective Bolena, at which Ferrell's trial counsel was present during a portion of the testimony in question, shows that Detective Bolena revealed Jones's status as a CI. Further, Ferrell introduced at the evidentiary hearing the deposition of Sidney Jones, taken in codefendant Johnson's case before Ferrell went to trial. Jones testified that he was a paid CI for both the robbery and narcotics division of the Jacksonville Sheriff's Office. Although Ferrell's trial counsel was not personally in attendance at that deposition, Bateh, the prosecutor who tried Ferrell's case, testified at the evidentiary hearing that he had personal knowledge that Ferrell's trial counsel had a copy of Jones' deposition prior to Ferrell's trial and that he had personally discussed the deposition with trial counsel before Ferrell's trial. The trial court found Bateh's testimony to be credible.
Because the evidence at the evidentiary hearing established that Ferrell's trial counsel was in possession of the information Ferrell alleged had been withheld, this Brady claim must fail.

State's Cross-Appeal
As to Ferrell's claim that trial counsel was ineffective in the penalty phase for failing to investigate and present mitigation evidence, resulting in prejudice to Ferrell, the trial court held an evidentiary hearing and granted relief. The State cross-appeals this ruling. Because the trial court made factual findings, we defer to the factual findings that are supported by competent, substantial evidence but review the legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004). The State first asserts that the trial court erred in concluding that Ferrell's waiver of this evidence was not knowing and intelligent. Second, the State challenges the trial court's findings of prejudice.
Ferrell contends in response that his waiver of mitigation was invalid because trial counsel failed to investigate potential penalty-phase mitigation and hence he could not knowingly, voluntarily, and intelligently waive the presentation of mitigation evidence. Ferrell also contends that based on the mental mitigation evidence presented at the evidentiary hearing, there was a reasonable probability, in light of the seven-to-five vote for death, that one juror might have been swayed had mental health mitigation been presented.
In support of his penalty phase claims, at the evidentiary hearing, Ferrell presented the testimony of his mother, sisters, brother, longtime friend, and ex-wife and mother of his children. Each of these witnesses also testified that they made repeated attempts to contact Ferrell's trial counsel, Richard Nichols, to no avail, or that they were never contacted by Nichols. These witnesses testified that Ferrell, his mother, and his siblings suffered and witnessed extensive abuse from Ferrell's father and were forced to move out of the family home when Ferrell was eleven years old. Ferrell grew up in a crime-ridden and drug-infested neighborhood and developed a drug and alcohol problem himself. These witnesses also testified that Ferrell was a regular churchgoer and he loved his children, family, and friends dearly and spent a lot of time with them.
Ferrell also presented the testimony of three doctors at the evidentiary hearing regarding mental health mitigation. Dr. Ernest Miller, an expert in forensic psychiatry, testified that he conducted a court-ordered psychiatric evaluation of Ferrell in *981 September 1991, which revealed no evidence of mental illness or mental retardation. He was never contacted by Nichols to perform a mitigation evaluation. Licensed psychologist Dr. Harry Krop testified that he interviewed and tested Ferrell in this case. He concluded that Ferrell functions in the borderline range of intelligence, but has significant deficits in frontal lobe functioning. Further, Dr. Krop testified that Ferrell was struck in the head on several occasions during which he briefly lost consciousness. Dr. Krop also noted that Ferrell suffers from antisocial personality disorder and has abused crack cocaine and marijuana. Dr. Krop opined that there was mitigation evidence to present in this case and that no psychological evaluation was completed on Ferrell at the time of trial, only the court-ordered psychiatric evaluation by Dr. Miller. Finally, Dr. Stephen Golding, a professor of forensic psychology, testified that he found a number of areas in this case that would have been potential mitigators, but were not investigated.
The State presented the testimony of Dr. Tannahill Glen, a clinical neuropsychologist. Although Dr. Glen did not evaluate Ferrell, she reviewed his neuropsychological testing results, his school records, and his criminal history. Dr. Glen testified that there was no specific evidence in Ferrell's file to suggest a frontal lobe disorder.
To determine whether the trial court erred in granting Ferrell a new penalty phase on this issue, we first evaluate whether Ferrell's trial counsel was deficient in failing to conduct an adequate penalty-phase investigation, such that Ferrell could not make a knowing and intelligent waiver. Then, assuming that competent, substantial evidence supports the trial court's conclusion that the waiver was not knowing and voluntary, we consider whether the trial court correctly concluded that Ferrell was prejudiced by trial counsel's failure to present any mitigation evidence.

Waiver
The State argues that the trial court erred in ruling that Ferrell's waiver did not defeat a claim of ineffective assistance of counsel because Ferrell failed to prove that his waiver was not knowing, voluntary, and intelligent. In Grim v. State, 971 So.2d 85 (Fla.2007), this Court explained:
"`When evaluating claims that counsel was ineffective for failing to investigate or present mitigating evidence, this Court has phrased the defendant's burden as showing that counsel's ineffectiveness `deprived the defendant of a reliable penalty phase proceeding.'"' Henry [v. State,] 937 So.2d [563] at 569 [(Fla.2006)] (quoting Asay v. State, 769 So.2d 974, 985 (Fla.2000) (quoting Rutherford v. State, 727 So.2d 216, 223 (Fla. 1998))). "However, along with examining what evidence was not investigated and presented, we also look at counsel's reasons for not doing so." Sliney v. State, 944 So.2d 270, 281-82 (Fla.2006). Defendants have the right to waive presentation of mitigating evidence. E.g., Koon [v. Dugger], 619 So.2d [246] at 249 [(Fla.1993)] ("We have repeatedly recognized the right of a competent defendant to waive presentation of mitigating evidence."). However, as we recognized in Koon, 619 So.2d at 250:
When a defendant, against his counsel's advice, refuses to permit the presentation of mitigating evidence in the penalty phase, counsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what the evidence *982 would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence.[[12]]
Grim, 971 So.2d at 99-100. Significantly, as to the issues we consider in this case, the Court went on to explain:

We have recognized that a defendant's waiver of his right to present mitigation does not relieve trial counsel of the duty to investigate and ensure that the defendant's decision is fully informed. See, e.g., State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002) ("Although a defendant may waive mitigation, he cannot do so blindly; counsel must first investigate all avenues and advise the defendant so that the defendant reasonably understands what is being waived and its ramifications and hence is able to make an informed, intelligent decision.").
Grim, 971 So.2d at 100 (emphasis supplied).
The instant case is analogous to State v. Pearce, 994 So.2d 1094 (Fla.2008), in which the State cross-appealed the trial court's order granting the defendant a new penalty phase because of trial counsel's failure to investigate and present available mitigation. In affirming the trial court's ruling, this Court stated:
The State asserts that the trial court erred in granting Pearce a new penalty phase based on the ineffective assistance of counsel because Pearce, as opposed to counsel, was responsible for the failure to present mitigation. Pearce asserts that his waiver of mitigation was invalid since trial counsel failed to investigate potential penalty phase mitigation and hence he could not knowingly, voluntarily, and intelligently waive the presentation of mitigation evidence. The trial court held an evidentiary hearing on this claim at which Pearce called numerous witnesses. In its final order, the trial court concluded that trial counsel failed to do anything to prepare for the penalty phase of the trial and that there was mitigation that counsel should have investigated and presented. These findings are supported by competent, substantial evidence.
Id. at 1101. The Court further explained:
We find there is competent, substantial evidence to support the trial court's finding that counsel did not spend sufficient time to prepare for mitigation prior to Pearce's waiver. In preparing for the penalty phase, counsel never investigated Pearce's background, never interviewed members of Pearce's family, and never investigated mental health issues. Therefore, counsel was unable to advise Pearce as to potential mitigation. Thus, the evidence supports the trial court's finding that Pearce's waiver of the presentation of mitigating evidence was not knowingly, voluntarily, and intelligently made. Pearce suffered prejudice based on this lack of a knowing waiver because there was substantial mitigating evidence which was available but undiscovered. We affirm the trial court's conclusion that Pearce established a claim for ineffective assistance of counsel in the penalty phase of the trial.
Id. at 1102-03.
This case is also analogous to Deaton v. Dugger, 635 So.2d 4 (Fla.1993). There, this Court affirmed the trial court's order granting a new sentencing proceeding on the grounds that defendant's waiver of his right to testify and the right to call witnesses *983 to present evidence in mitigation was not knowing, voluntary, and intelligent because trial counsel failed to adequately investigate mitigation. Id. at 8-9. This Court noted that "clear evidence was presented that defense counsel did not properly investigate and prepare for the penalty phase proceeding." Id. at 8. The Court further recognized that "no evidence whatsoever was presented to the jury in mitigation and the trial judge found only one mitigating factor, even though evidence presented at the rule 3.850 evidentiary hearing established that a number of mitigating circumstances existed." Id. Finally, the Court concluded that counsel's deficiencies were sufficiently serious to have deprived the defendant of a reliable penalty phase proceeding. Id. at 9.
Similarly, in this case, the trial court's conclusion that Ferrell's waiver was not knowing and voluntary is supported by competent, substantial evidence. This is not only because counsel was deceased and unavailable to testify, but also because of the complete absence of any evidence that counsel meaningfully investigated mitigation in order to ensure that Ferrell's waiver of mitigation was knowing and voluntary. Each of the witnesses who testified for Ferrell stated that they made repeated unsuccessful attempts to contact trial counsel and were never contacted by him. There is simply no indication that trial counsel performed any investigation into the penalty phase.
In this case, counsel was deceased and that fact presented a challenge for the defense, the State, and the trial court. However, the mere fact that counsel is not available to testify does not mean an automatic win either for the defense or the State. Instead, it requires an evaluation of all the evidence presented. See, e.g., Wainwright v. State, 896 So.2d 695, 700-02 (Fla.2004) (denying an ineffective assistance of counsel claim because competent, substantial evidence supported the trial court's determination that even though counsel was unavailable to testify at the evidentiary hearing as to what occurred concerning the defendant's plea negotiations, other witnesses testified that the plea negotiations failed because of the defendant's inability to meet the conditions of the plea agreement, not because of anything counsel did or did not doalso noting that the trial court found that trial counsel was an experienced trial lawyer and "must be presumed to have acted in a reasonable manner").
The State, in asserting that the trial court improperly shifted the burden to the State to prove that Ferrell's waiver was knowing and voluntary, focuses on a portion of the trial court's order in which it stated that it was granting a new penalty phase because the Court could not determine whether the defendant's waiver of mitigation was knowing and voluntary. However, the trial court clearly evaluated all of the evidence presented. In its order, the trial court further discussed the issue of the failure of counsel to investigate mitigation as a basis for concluding that the waiver of mitigation was not knowing and voluntary:
[T]his Court shall focus on one main contention: that the Defendant did not knowingly and voluntarily waive the presentation of mental health mitigation as trial counsel consulted no mental health experts in preparation of the penalty phase. The Defendant presented the testimony of three mental health experts at the evidentiary hearing: Dr. Harry Krop who is a forensic psychologist, Dr. Stephen Golding who is a professor of forensic psychology in Utah, and Dr. Ernest Miller who is a retired forensic psychiatrist. While Dr. Miller was ordered in 1991 to do a psychiatric *984 examination on the Defendant to determine competency to stand trial, sanity at the time of the crime, and determine whether the Defendant met the criteria to be hospitalized, he could not recall being asked to do a mitigation evaluation and did not recall performing one.
This Court listened to the testimony of each of the doctors presented, and reviewed their testimony again in preparing this Order. This Court is without the benefit of testimony from Mr. Nichols as to what investigation he did or did not do and his reasons behind his decisions. The record dialog concerning the Defendant waiving the presentation of mitigation witnesses is less than informative on this issue. Without knowing what attempts counsel made to investigate mental health mitigators available to him, this Court cannot find that the Defendant made a knowing and intelligent waiver. While the State did present their own doctor to rebut the mental health mitigators presented by the Defendant at the evidentiary hearing, this Court cannot say that the Defendant has failed to establish prejudice. The jury vote in this case was seven to five in favor of a death recommendation. The jurors would have had to weigh the credibility of each doctor and determine what testimony to believe. The swaying of the vote of only one would have made a critical difference. Accordingly, there is a reasonable probability that the vote of one juror might have been swayed had mental health mitigation been presented, thereby negating the Defendant's death sentence.
Thus, the trial court did not impermissibly place the burden on the State to prove that the waiver was knowing and voluntary.
Contrary to other cases we have considered, in this case there is no indication that Ferrell or his family was uncooperative or refused to participate in an investigation into mitigation; in fact, the opposite is established. Nor is this a case where there is any indication that Ferrell refused to participate in mental health examinations. There is simply no indication in the record that trial counsel performed any investigation into the penalty phase so that a knowing and voluntary waiver could take place. The following is the entire communication between the trial court, defense counsel, and Ferrell as to waiver of the presentation of mitigation evidence after the State rested its case-in-chief:
THE COURT: The defendant in this casedefense attorney, Mr. Nichols, has advised that the defendant would rest, would not put on any witnesses, is that correct?
TRIAL COUNSEL: Yes, sir.
THE COURT: Now, Mr. Nichols, before you made that announcement, have you conferred with the defendant and advised him of his right to testify or put on witnesses?
TRIAL COUNSEL: Yes, sir, I have. And I havehe has instructed me that he does not want to testify himself, taken the position he's not guilty and wasn't there and there is nothing to offer by way of mitigation.
And consequently there are no other witnesses to call.
THE COURT: All right. Mr. Ferrell, you have heard what your attorney just said, it was your decision not to testify and not to put on any witnesses, is that correct?
FERRELL: Yes, sir.
Although this abbreviated colloquy appears in the trial court record, it provides no indication that Ferrell was aware of any potential mitigation. Instead, Ferrell presented competent, substantial evidence at the evidentiary hearing to support a finding that trial counsel failed to adequately *985 investigate potential mitigation evidence, which in turn rendered Ferrell's waiver not knowing, voluntary, and intelligent. See State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002) ("Although a defendant may waive mitigation, he cannot do so blindly; counsel must first investigate all avenues and advise the defendant so that the defendant reasonably understands what is being waived and its ramifications and hence is able to make an informed, intelligent decision."); see also Wiggins v. Smith, 539 U.S. 510, 534-38, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (holding that the decision of trial counsel not to expand their investigation of petitioner's life history for mitigating evidence beyond presentence investigation report and department of social services records fell short of prevailing professional standards and inadequate investigation by counsel prejudiced the petitioner). Ferrell's mother, two sisters, brother, and longtime friend since childhood each testified that they were not contacted by Nichols and tried to contact him repeatedly, but he never responded. See Pearce, 994 So.2d at 1101 (noting that "[c]ounsel never contacted any of Pearce's family members in an attempt to discover potential mitigation" in concluding there was competent, substantial evidence to support the trial court's conclusion that trial counsel failed to do anything to prepare for the penalty phase). Also, Ferrell presented evidence that trial counsel failed to retain or consult with a mental health expert to test and evaluate Ferrell for potential mental mitigators. While Dr. Miller testified that he was ordered in 1991 to do a psychiatric examination on Ferrell to determine his competency to stand trial and sanity at the time of the crime and to determine whether Ferrell met the criteria to be hospitalized, he could not recall being asked to do a mitigation evaluation and did not recall performing one. The State, in contrast, presented no evidence that counsel did perform an investigation into mitigation.
Because there was competent, substantial evidence to support the trial court's conclusion that the waiver was not voluntary, the State's claim that trial counsel was not deficient must fail. See Pearce, 994 So.2d at 1102-03.

Prejudice
The State claims next that even if this Court finds that Ferrell's waiver was not knowing, voluntary, and intelligent, we should decide that the trial court erred in concluding that Ferrell established prejudice based on its finding that "there [was] a reasonable probability that the vote of one juror might have been swayed had mental health mitigation been presented, thereby negating the Defendant's death sentence." Although the trial court did not specifically state what evidence it relied on in finding prejudice, its finding necessarily involves a finding that mitigation evidence existed that should have been presented. This finding is supported by competent, substantial evidence. Witnesses presented by Ferrell, including his family members, friends, Dr. Krop, and Dr. Golding, testified concerning the mitigation evidence that could have been discovered and presented in the penalty phase.
Thus, there was competent, substantial evidence to support a conclusion that Ferrell's lack of a knowing waiver resulted in prejudice because "there was substantial mitigating evidence which was available but undiscovered." Pearce, 994 So.2d at 1103; see also Deaton, 635 So.2d at 9 ("In view of [the testimony of trial counsel] and other substantial evidence presented at the postconviction hearing, including the testimony of two mental health experts, we believe that counsel's shortcomings were sufficiently serious to have deprived Deaton *986 of a reliable penalty phase proceeding."). Trial counsel's deficiency in failing to investigate and present this mitigation evidence deprived Ferrell of a reliable penalty proceeding such that this Court's confidence in the outcome is undermined. See Henry v. State, 937 So.2d 563, 569 (Fla. 2006). This is particularly the case in light of the close jury vote of seven to five. See Phillips v. State, 608 So.2d 778, 783 (Fla. 1992) ("The jury vote in this case was seven to five in favor of a death recommendation. The swaying of the vote of only one juror would have made a critical difference here. Accordingly, we find that there is a reasonable probability that but for counsel's deficient performance in failing to present mitigating evidence the vote of one juror would have been different, thereby changing the jury's vote to six to six and resulting in a recommendation of life reasonably supported by mitigating evidence.")
The State claims that the trial court erred in concluding that the mitigation evidence would probably have swayed at least one more juror to vote for life over death because the evidence presented at the evidentiary hearing also portrayed Ferrell in a negative light. See Reed v. State, 875 So.2d 415, 437 (Fla.2004) ("An ineffective assistance claim does not arise from the failure to present mitigation evidence where that evidence presents a double-edged sword."). The State cites to the following as evidence that was not favorable to Ferrell: (1) Dr. Krop's conclusion that Ferrell suffers from an antisocial personality disorder;[13] (2) Dr. Krop's testimony that Ferrell had been suspended from school, had been involved in the juvenile and adult justice system, had been a drug dealer, and was unfaithful to his wife and was "promiscuous"; (3) the testimony of various family members that Ferrell's mother was a hardworking, nurturing, and supportive woman who tried to teach her son right from wrong to no avail; and (4) the testimony of various family members that they had suffered the same abuse, but had never been in trouble with the law and if they had, they had learned from their mistakes. Although this testimony portrayed Ferrell negatively, the trial court made factual determinations that there was a "reasonable probability that the vote of one juror might have been swayed had mental health [mitigation] been presented, thereby negating the Defendant's death sentence." These findings are entitled to deference. Moreover, because a determination of ineffective assistance of counsel is a mixed question of law and fact, and because the test of prejudice is whether the Court's confidence in the outcome of the penalty phase is undermined, this Court independently concludes that the penalty phase in this case was not reliable without counsel having performed any investigation into mitigation and without a knowing and voluntary waiver of mental mitigation. See Hannon v. State, 941 So.2d 1109, 1134 (Fla.2006) ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of the mental health mitigation presented during the postconviction evidentiary hearing to determine if our confidence in the outcome of the penalty phase trial is undermined."); Asay v. State, 769 So.2d 974, 985 (Fla. 2000) ("When evaluating claims that counsel was ineffective for failing to present *987 mitigating evidence, this Court has phrased the defendant's burden as showing that counsel's ineffectiveness `deprived the defendant of a reliable penalty phase proceeding.'"); see also Strickland, 466 U.S. at 687, 694, 104 S.Ct. 2052.
Finally, we review Ferrell's claim that not only did his trial counsel essentially do nothing to save his life, but he also failed to object to any of the improper penalty-phase arguments, which further compounded the prejudice from the failure to present mitigation. We agree that five of the arguments to which Ferrell's counsel did not object were clearly impermissible, and we can perceive of no valid strategic reason to fail to interpose an objection.
First, the prosecutor improperly invited the jury to disregard the law when he stated:
Some of you may be tempted to take the easy way out, and by that, I mean, you may be tempted not to weigh all of these aggravating circumstances and to consider the mitigating circumstances. That you may not want to carry out your full responsibility under the law and just decide to take the easy way out and to vote for death. I'm sorry, vote for life.... I ask you not to be tempted to do that, I ask you to follow the law, to carefully weigh the aggravating circumstances, to consider the mitigating circumstances, and you will see these aggravating circumstances clearly outweigh any mitigating circumstances if there are any. And then under the law and the facts death is a proper recommendation.
These remarks are very similar to those condemned by this Court in Urbin v. State, 714 So.2d 411 (Fla.1998). There, the prosecutor argued, "[M]y concern is that some of you may be tempted to take the easy way out, to not weigh the aggravating circumstances and the mitigating circumstances and not want to fully carry out your responsibility and just vote for life." Id. at 421.
Second, the prosecutor improperly commented that the age mitigator could only apply to someone younger than Ferrell. See Barnhill v. State, 834 So.2d 836, 852 (Fla.2002) ("[N]o per se rule exists to pinpoint a particular age as an automatic factor in mitigation."). Third, the prosecutor improperly argued that his case deserved the death penalty when he stated:
The State doesn't seek the death penalty in all first degree murders, it's not always proper to do that.... But where the facts, where there are facts surrounding the murder that demand the death penalty, the state has an obligation to come forward and seek the death penalty. This is one of those cases.
The State agrees that this comment was improper. See Brooks v. State, 762 So.2d 879, 902 (Fla.2000) (noting that similar comment was irrelevant and "tends to cloak the State's case with legitimacy as a bona-fide death penalty prosecution").
Fourth, Ferrell argues that the State improperly vouched for the credibility of several witnesses by placing the prestige of the government behind the witnesses as condemned in Gorby v. State, 630 So.2d 544, 547 (Fla.1993). This impermissible vouching occurred in both the guilt and the penalty phase. Fifth, Ferrell points to the following argument where the prosecutor stated, "I'll leave you with one final thought, I'm going to ask you to show this Defendant the same sympathy, the same mercy he showed Gino Mayhew and that was none." The State concedes that this comment was improper based on this Court's precedent. See Urbin, 714 So.2d at 421 (recognizing that this "same mercy" *988 argument is "blatantly impermissible" under the Court's precedent) (citing Rhodes v. State, 547 So.2d 1201, 1206 (Fla.1989); Richardson v. State, 604 So.2d 1107, 1109 (Fla.1992)).
When viewed in conjunction with the other failures of trial counsel regarding the lack of investigation into mitigation, the failure of trial counsel to object to even one of these clearly improper remarks left the State's case virtually untested. The State's arguments that the jury would be violating their lawful duty if they did not vote for death, the statement that the age mitigator could only apply to someone younger than Ferrell, the statement that this case deserved the death penalty, the statements vouching for the credibility of various witnesses, and the mercy argument, all serve to strengthen the contention that our confidence in the outcome of the penalty phase is undermined. We do not look at either the failure of trial counsel concerning the lack of investigation into mitigation or the failure of trial counsel to object to the improper prosecutorial argument in isolation, but we consider these factors in conjunction with the following other factors concerning the penalty phase that also serve to diminish this Court's confidence in the outcome: (1) the jury vote in this case was a close seven to five in favor of death; and (2) Ferrell was not the shooter. For all of these reasons, we affirm the trial court's order granting a new penalty phase.

Ferrell's Habeas Claims
Ferrell raises two claims of ineffective assistance of appellate counsel in his habeas petition. He contends that appellate counsel was ineffective on direct appeal for failing to raise the following claims: (1) prosecutorial misconduct during closing arguments in both the guilt and penalty phases; and (2) a Cronic violation.

I. Prosecutorial Misconduct During Closing Arguments
Ferrell argues that appellate counsel was ineffective for failing to raise on direct appeal numerous allegedly improper prosecutorial comments made during closing arguments in the guilt and penalty phases of his trial, all of which were not objected to at trial. Ferrell claims that these comments rise to the level of fundamental error such that appellate counsel was ineffective for failing to raise any issue regarding prosecutorial argument on direct appeal. See Archer v. State, 934 So.2d 1187, 1205 (Fla.2006) ("[A]ppellate counsel cannot be ineffective for failing to raise issues not preserved for appeal. The only exception to this rule is when the claim involves fundamental error.") (citations omitted). Because we have considered the improper penalty phase arguments in connection with the trial court's order granting Ferrell a new penalty phase, we do not consider them again in conjunction with the habeas claims.
As to the remaining guilt-phase comments, we have considered each comment and conclude that the comments either were not improper or did not constitute fundamental error, such that appellate counsel was ineffective for failing to raise them on direct appeal.

II. Cronic Violation
In this claim, Ferrell alleges that his appellate counsel was ineffective for failing to raise on direct appeal a Cronic violation of per se ineffectiveness. As the State correctly argues, this claim should be rejected because a Cronic claim is an ineffective assistance claim, and appellate counsel is not ineffective for failing to raise a claim of ineffective assistance of trial counsel on direct appeal. See Stewart v. Crosby, 880 So.2d 529, 531 (Fla.2004) ("[A]ppellate counsel is not ineffective for failing to raise a claim of ineffective assistance *989 of trial counsel on direct appeal because such claims are more effectively raised in a motion for postconviction relief under rule 3.850."). Ferrell claims in response that trial counsel's per se ineffectiveness was apparent on the face of the trial record and thus, appellate counsel was ineffective for failing to raise that ineffectiveness. However, as concluded previously, Ferrell failed to establish any of his guilt-phase ineffective assistance of counsel claims. Thus, we conclude that the ineffectiveness was not apparent on the face of the trial record.
Accordingly, we deny relief on this claim.

CONCLUSION
Based on the foregoing, we affirm the trial court's order granting in part and denying in part Ferrell's rule 3.850 motion, and we deny his habeas petition.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, LABARGA, and PERRY, JJ., concur.
CANADY, J., concurs in part and dissents in part with an opinion, in which POLSTON, J., concurs.
CANADY, J., concurring in part and dissenting in part.
I concur in the decision to deny Ferrell's petition for a writ of habeas corpus and the decision to affirm the denial of his guilt-phase ineffective assistance of counsel claims. But I dissent from the decision to affirm the postconviction court's granting of a new penalty phase because I conclude that the postconviction court's decision is at odds with Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
I disagree with the conclusion that Ferrell's waiver of mitigation was invalid due to counsel's ineffectiveness. The postconviction court's conclusion on this point lacks evidentiary support; it results from an impermissible shifting of the burden of proof to the State. This error is apparent on the face of the postconviction court's order, which states in pertinent part as follows:
This court is without the benefit of testimony from [defense counsel] as to what investigation he did or did not do and his reasons behind his decisions. The record dialogue concerning the defendant waiving the presentation of mitigation witnesses is less than informative on this issue. Without knowing what attempts counsel made to investigate mental health mitigators available to him, this court cannot find that the defendant made a knowing and intelligent waiver.
The same error is apparent on the face of the majority's opinion. The majority concludes that the "competent, substantial evidence" supporting the postconviction court's determination that trial counsel was deficient is "the complete absence of any evidence that counsel meaningfully investigated mitigation in order to ensure that Ferrell's waiver of mitigation was knowing and voluntary." Majority op. at 983.
Strickland makes clear that a defendant seeking postconviction relief has the burden of proving the basis for relief: "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88, 104 S.Ct. 2052 (emphasis added). Under Strickland, "[j]udicial scrutiny of counsel's performance must be highly deferential." Thus, "[a] court must indulge a strong presumption that counsel's conduct falls *990 within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052. In the instant case, there is no basis for the conclusion that Ferrell overcame the presumption of effective assistance and met his burden of showing ineffectiveness.
At the evidentiary hearing before the postconviction court, Ferrell failed to submit any evidence concerning the advice given to him by defense counsel regarding the issue of mitigation. Contrary to the trial court's ruling, the fact that defense counsel was deceased and thus unavailable to testify does not provide a basis for shifting the burden of proof to the State and concluding that Ferrell's claim of ineffective assistance had merit. Ferrell himself was, of course, available to testify, but he failed to do so. As a consequence, we know absolutely nothing about what defense counsel and Ferrell discussed regarding mitigation. In circumstances such as those present here, if Strickland's strong presumption of effectiveness means anything, it must mean that it is presumed that defense counsel thoroughly discussed with Ferrell the various types of mitigation evidence that were or might be available and how such evidence would be of benefit in avoiding a death sentence.
The evidence that counsel failed to discuss mitigation with members of Ferrell's family is insufficient to overcome the presumption of effectiveness. It is certainly not unprecedented for a defendant who has decided to forgo the presentation of mitigation to instruct defense counsel to refrain from discussing mitigation with the defendant's family. In such circumstances, counsel's failure to consult with the defendant's family concerning mitigation is not itself sufficient to invalidate the defendant's waiver of mitigation; it must also be shown that counsel failed to adequately advise the defendant about the significance of the mitigation evidence that might be forthcoming from the defendant's family. In short, counsel need not investigate mitigation of a type which has been categorically rejected by the defendant after the defendant has been advised by counsel of the significance of such mitigation. This necessarily follows from the recognition that "the defendant, not the attorney, is the captain of the ship," Nixon v. Singletary, 758 So.2d 618, 625 (Fla. 2000), and that the "defendant has the right to choose what evidence, if any, the defense will present during the penalty phase." Boyd v. State, 910 So.2d 167, 189-90 (Fla.2005).
I acknowledge that Koon v. Dugger, 619 So.2d 246 (Fla.1993), may be read as establishing that a defendant may not categorically preclude counsel's investigation of mitigation. But Koon does not control here. The majority notes that "Koon, which sets forth the inquiry necessary when a defendant wishes to waive mitigating evidence against the advice of counsel, was decided after the trial in this case." Majority op. at 982 note 12. It should also be noted that the rule adopted in Koon concerning the inquiry relating to the waiver of mitigation was expressly established as a "prospective rule." 619 So.2d at 250. Accordingly, that rulewhatever its merits may behas no application in this case. Trial counsel cannot reasonably be faulted for failing in 1992 to follow the prospective rule laid down by Koon in 1993.
Based on the record presented here, Ferrell not only failed to establish that counsel's performance was deficient but also failed to show prejudice. All we know concerning Ferrell's desires concerning mitigation is found in the admittedly terse colloquy in the trial court proceedings where Ferrell agreed with counsel's statement that Ferrell had "taken the position he's not guilty and wasn't there and there *991 is nothing to offer by way of mitigation." The record is devoid of any evidence even suggestingmust less establishingthat further investigation of mitigation by counsel would have caused Ferrell to reconsider his decision to rely on his claim of innocence and to reject the presentation of mitigation. See Schriro v. Landrigan, 550 U.S. 465, 478, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("[I]t was not objectively unreasonable for [the state postconviction] court to conclude that a defendant who refused to allow the presentation of any mitigating evidence could not establish Strickland prejudice based on his counsel's failure to investigate further possible mitigating evidence."). The conclusion that prejudice was established here can only flow from an unwarranted presumption of prejudice. Under Strickland, the State does not have any burden to prove that Ferrell was not prejudiced by his counsel's performance. "Strickland places the burden on the defendant, not the State, to show a `reasonable probability' that the result would have been different." Wong v. Belmontes, ___ U.S. ___, 130 S.Ct. 383, ___ L.Ed.2d ___ (2009) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
Both Deaton v. Dugger, 635 So.2d 4 (Fla.1993), and State v. Pearce, 994 So.2d 1094 (Fla.2008)the primary authorities relied on by the majorityare distinguishable. Neither Deaton nor Pearce expressly shifted the burden of proof on the issue of ineffectiveness to the State.
In Deaton, the testimony of trial counsel established the inadequacy of the advice given by counsel to the defendant concerning mitigation and thus provided evidentiary support for a finding of deficient performance by counsel. When counsel was asked at the postconviction evidentiary hearing whether he explained to the defendant the mitigating circumstances that could be pursued, counsel responded: "No, except he could testify as to his treatment and how he was emotionally abused as a child. Just very briefly, if he wanted to testify." Deaton, 635 So.2d at 9.
In Pearce, trial counsel testified. The lawyer who had primary responsibility for the penalty phase "testified that he did not conduct any preparation for the penalty phase of the trial." 994 So.2d at 1101. Other evidence was presented concerning actions that counsel failed to undertake. We concluded in Pearce that "counsel was unable to advise Pearce as to potential mitigation." Id. at 1103. Relying on Koon and its progeny, we concluded that Pearce was entitled to relief. The Pearce opinion contains no indication that counsel gave any testimony specifically concerning the substance of the advice given by counsel to the defendant concerning mitigation. To the extent that Pearce can be read as suggesting that the substance of such advice has no bearing on a claim that a waiver of mitigation was invalid due to counsel's ineffectiveness, it cannot be reconciled with Strickland.
In sum, with respect to his waiver of mitigation, Ferrell failed to carry his burden of establishing either deficient performance of counsel or prejudice.
With respect to Ferrell's argument concerning defense counsel's failure to object to certain penalty-phase arguments made by the State, I would conclude that given the weighty aggravation present and Ferrell's decision to forgo the presentation of any mitigation, Ferrell cannot establish that he was prejudiced by any deficiency in counsel's performance.
Since Ferrell has failed to establish that he is entitled to relief, the sentence of death should not be disturbed.
POLSTON, J., concurs.
NOTES
[1] Hartley was convicted on all counts and sentenced to death. His convictions and sentence of death were upheld by this Court in Hartley v. State, 686 So.2d 1316 (Fla.1996). This Court later affirmed the trial court's denial of Hartley's motion for postconviction relief. See Hartley v. State, 990 So.2d 1008 (Fla.2008). Johnson was convicted and sentenced to life imprisonment. Ferrell, 686 So.2d at 1326.
[2] Ferrell raised twelve claims on direct appeal: (1) the trial judge improperly commented on the biblical origins of the commandment "thou shalt not kill"; (2) the trial judge erred in admitting evidence that Ferrell and Hartley robbed the victim two days before the murder; (3) the trial judge erroneously admitted, as an excited utterance, a statement made by the victim regarding the robbery that occurred two days before the victim was murdered; (4) insufficient evidence existed to support Ferrell's first-degree murder conviction; (5) insufficient evidence existed to support Ferrell's armed robbery conviction; (6) the trial judge erred in sentencing Ferrell as a habitual felony offender; (7) the trial judge erroneously instructed the jury on the aggravating factor of CCP; (8) the trial judge erred in finding that the murder was CCP; (9) the trial judge erred in finding that the murder was committed for financial gain; (10) the trial judge erred in finding that this murder was HAC; (11) the trial judge improperly doubled the aggravating factors of kidnapping and committed for pecuniary gain; and (12) the trial judge erred in denying Ferrell's request for a special verdict. Id. at 1327.
[3] Ferrell raised the following claims: (1) trial counsel was ineffective during all phases of the trial due to his inactivity, thus violating Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (including thirteen subclaims); (2) the State presented knowingly false material information concerning the media coverage of the victim's death, which prejudiced Ferrell in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and impermissibly bolstered the testimony of key witness Robert Williams; (3) the State improperly withheld material evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), with respect to specific police interviews, notes, and statements; (4) newly discovered evidence in the form of witnesses available to testify shows that "snitches" were actively recruited in this case; (5) the cumulative effect of claims one through four deprived Ferrell of a fair trial; (6) Ferrell is innocent and there is insufficient evidence to support his conviction and sentence; (7) Ferrell was denied a proper direct appeal due to omissions in the record and is being denied effective assistance of postconviction counsel because the record is incomplete; (8) the Florida Supreme Court erred during the direct appeal when it failed to remand for resentencing after striking the HAC aggravator; (9) Florida's capital sentencing statute is unconstitutional on its face and as applied and counsel was ineffective for failing to properly litigate this issue at trial and on appeal; (10) lethal injection is unconstitutional; and (11) cumulative error requires relief, including the issue of alleged prosecutorial misconduct in both the guilt and penalty phasesan issue already raised by Ferrell in claim one of his postconviction motion concerning ineffective assistance of counsel.
[4] Huff v. State, 622 So.2d 982 (Fla. 1993).
[5] Ferrell claimed that Eartha Griffin's son, Russell Griffin, told another person, Natasha Brown, that he saw the whole murder and Ferrell had nothing to do with it.
[6] Ferrell claims on appeal that the circuit court erred in denying the following claims: (1) his trial counsel was ineffective during the guilt phase (includes thirteen subclaims); (2) the State violated Giglio as a result of its improper closing arguments; (3) the State improperly withheld material evidence in violation of Brady; (4) newly discovered evidence exists that could have been used to negate the State's theory of guilt and would have established that someone other than Ferrell committed the murder; (5) cumulative error deprived Ferrell of a fair trial; (6) Ferrell is innocent of first-degree murder; (7) Ferrell was denied a proper direct appeal; (8) this Court erred on direct appeal in failing to remand for a new penalty phase when it struck the HAC aggravator; (9) Florida's capital sentencing statute is unconstitutional; (10) execution by lethal injection constitutes cruel and unusual punishment; and (11) prosecutorial misconduct resulted in fundamental error, requiring a new trial.

In the subclaims under claim 1 concerning trial counsel's failure to object to jury instructions and file a motion for change of venue, and in claims 4 through 11 of Ferrell's initial brief, he merely incorporates the arguments in his postconviction motion by reference. As a result, Ferrell has waived these claims, and we thus deny relief on these claims without discussion. "The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived." Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990); see also Simmons v. State, 934 So.2d 1100 (Fla.2006) (same). Nonetheless, we have reviewed the merits of each of these claims and find them to be without merit.
[7] Ferrell argues in his habeas petition that appellate counsel was ineffective for (1) failing to raise a claim of prosecutorial misconduct on appeal; and (2) failing to raise a Cronic violation on direct appeal.
[8] In his first subclaim, Ferrell alleges only that the circuit court failed to rule on the merits of his claim that trial counsel was ineffective for failing to meet and consult with Ferrell, Ferrell's family and friends, and other important witnesses. We reject this claim because the circuit court explicitly stated in its order that it determined that the same allegations in this general claim of ineffectiveness were included within more specific subclaims, each of which it specifically addressed.
[9] Ferrell does not challenge the trial court's rejection of Dr. Boehme's testimony on appeal.
[10] To the extent Ferrell also alleges under this issue that trial counsel failed to capitalize on any of the "numerous inconsistencies" in the statements of State witnesses, this allegation is conclusory because Ferrell failed to identify the alleged inconsistencies in his motion, at the evidentiary hearing, or on appeal.
[11] Although Ferrell's first amended postconviction motion was filed in August 2004, his initial rule 3.850 motion was filed in April 1997, before the change to Florida Rule of Criminal Procedure 3.851. Therefore, this Court analyzes Ferrell's claims under the summary denial standard set forth in rule 3.850(d). See, e.g., Gore v. State, 964 So.2d 1257 (Fla.2007).
[12] Koon, which set forth the inquiry necessary when a defendant wishes to waive mitigating evidence against the advice of counsel, was decided after the trial in this case.
[13] This Court has recognized that antisocial personality disorder is "a trait most jurors tend to look disfavorably upon." Freeman v. State, 858 So.2d 319, 327 (Fla.2003); see also Heath v. State, 3 So.3d 1017, 1030 (Fla.2009) (concluding that it was a reasonable strategic decision of counsel not to present to the jury evidence of defendant's antisocial personality disorder diagnosis because such evidence would harm rather than help the defendant's penalty phase presentation).